STATE ex rel. JOHN RAMMING, Appellant, v. THE
O'NEIL LUMBER COMPANY 'et al.,
Respondent.

St. Louis Court of Appeals, December 27, 1898.

1. **Mechanics' Lien:** BOND OF INDEMNITY: SUIT ON: TITLE. In the case at bar, it is reasonably clear that the parties contemplated that the title to the property should remain in the relator until the officers of the defendant Shooting the Chutes Company should in some affirmative way manifest their approval of the machinery in question and an intention to accept it.

2. ———: RELATOR: ESTOPPEL. In the case at bar, the respondent could not possibly have been induced to act as it did on account of anything the relator did. It pursued the only course that was open to it for the collection of its debt.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

LUBKE & MUENCH with W. FRANK CARTER for respondents.

Relator failed to show that there was no acceptance of his plant. It was not incumbent upon Shooting the Chutes Company to accept the plant of relator by any act of theirs, but they had ten days in which to reject it, if it did not work satisfactorily to them. The only requirement of the contract was that the plant should be operated until the Shooting the Chutes Company was satisfied, not to exceed ten days. Relator was bound to prove that the property furnished by him had not become a part of the realty. Trull v. Fuller, 28 Maine, 545; Stillman v. Flemicken, 58 Iowa, 450. Proof that the machinery may be removed without

injury to the buildings which cover it does not show that it is personalty, it must undergo other tests. 1 Washburn on Real Prop. [5 Ed.], p. 24; Hull v. St. Louis Mfg. Co., 22 Mo. App. 33; Thomas v. Davis, 76 Mo. 72; Heidegger v. Atlantic Milling Company, 16 Mo. App. 327; Buchannan v. Cole, 57 Mo. App. 11. Relator is estopped from claiming the value of the boilers and machinery mentioned in the bond: Because, in filing his lien, the relator treated the contract as performed, and the property as realty, and he can not now be heard to say otherwise. Relator is estopped from claiming this property by reason of the position taken by him in his petition filed in the assignment proceedings of Shooting the Chutes Company. Am. and Eng. Ency. of Law [1 Ed.], p. 32; Knoop v. Kelsey, 102 Mo. loc. cit. 298; McClanahan v. West, 100 Mo. loc. cit. 322; Bell v. Campbell, 123 Mo. loc. cit. 19. Because the failure to comply with his own contract can not now be taken advantage of by relator.

JAMES P. MAGINN for appellant.

Relator, under the evidence, is not estopped from denying that there was an acceptance of his plant by the Shooting the Chutes Company. The relator's plant, even though it had been accepted by the company, was not of such a character as to be the proper subject of mechanics' lien, in favor of the relator. Relator might therefore, at any time, after filing his lien under a mistake of law or fact, abandon its prosecution without asking anybody's permission. Relator was under no obligation to the O'Neil Lumber Company to abide by an erroneous diagnosis of his case; nor could that company legally claim a right to base its action as to its legal rights upon

relator's opinion as to his legal rights in the premises.
State v. Sitlington, 51 Mo. App. 252; Reichla v.
Gruensfelder, 52 Mo. App. 43; Bank v. Frame, 112
Mo. 502; as to lien, Richardson v. Koch, 81 Mo. 265.
Under the contract, until the Shooting the Chutes
Company was satisfied, and in consequence, the plant
turned over to said company, the title to the plant
necessarily remained in John Ramming. Whether the
company was satisfied and the plant turned over to it,
were questions of fact for the jury. Unless, therefore,
the relator's evidence proved that the company was
satisfied, and that the plant was turned over to it, and
proved it so conclusively that no doubt could be enter-
tained of these facts, giving the evidence of relator the
benefit of every fair inference therefrom, the court
erred in withdrawing the case from the jury. Wilson
v. Board of Education, 63 Mo. 137; Koeninger v.
Vogt, 88 Mo. 589. The decisive question, then is, is
there a reasonable doubt, under the evidence, whether
the Shooting the Chutes Company was satisfied with
the plant, or, that the plant was turned over to it? In
other words, is there a reasonable doubt, under the
evidence, whether the company accepted Mr. Ram-
ming's plant with Mr. Ramming's concurrence. The
questions asked by relator with reference to Mr.
Moran's statements and declarations, were competent,
and the court erred in excluding them. Robinson v.
Walton, 58 Mo. 380; Meagher v. People's, etc., 14 Mo.
App. 499; Scovill v. Glassner, 79 Mo. 449.

BIGGS, J.—The O'Neil Lumber Company obtained
a judgment against Shooting the Chutes Company en-
forcing a mechanics' lien against certain lots and the
buildings thereon. A special execution was issued and
the property was levied upon by the sheriff. In a shed-
room on the premises, which is designated as the power-

house, there were two boilers, a fly wheel, governor, and other machinery which composed the electrical plant on the premises. When the levy was made the relator Ramming claimed to be the owner of the machinery. He claimed it under the "Sheriffs and Marshalls Act," approved March 3, 1855, in consequence whereof a bond of indemnity was given by the O'Neil Lumber Company. In this action the relator sues on that bond for the value of the property, alleging that he owned it, and that the Shooting the Chutes Company had no interest therein.

In 1896, the Shooting the Chutes Company constructed a pleasure resort, and the relator had the contract to furnish the necessary machinery for the electrical plant, which formed a part of the improvements. The contract was in writing and dated September 3, 1896. That portion of the contract which is pertinent, is as follows:

"And we further agree that if, through any defect or incapacity, it shall be shown that said steam plant after installation, prove inadequate, to fulfill all or any conditions of this contract, said plant shall be removed at our cost, and all monies paid by Shooting the Chutes Company shall be refunded to them by us.

"Terms—We are to operate the plant until the Shooting the Chutes Company is satisfied for a period not to exceed ten (10) days, and upon turning the plant over to the Shooting the Chutes Company, we are to receive six hundred and ninety ($690) dollars then and there; the remaining (690) six hundred and ninety dollars to be paid on or before thirty days after first payment."

The plant was put in operation on September 20, 1896, and was run each succeeding night up to the following Thursday, when all of the property belonging to the company was seized by the sheriff under attachment.

A few days after the attachment was served the Shooting the Chutes Company made an assignment for the benefit of creditors. The O'Neil Lumber Company had furnished materials which were used in the construction of the buildings. To secure the amount due therefor the lumber company subsequently filed its mechanics' lien. The claim of the relator is that the chutes company at no time accepted the machinery; during the time the electrical plant was operated the machinery remained in the possession and under the sole control of relator for the purpose of being tested, as the contract required; that the operation of the machinery was not satisfactory and required some alterations and additions, and that while these were being done by the relator the property was seized under the attachment.

The defendants admitted the execution of the bond, but denied all other allegations of the petition. As special defenses it was averred that the machinery had become a part of the realty and had thereby lost its identity as personalty, which precluded the relator from maintaining his claim, and further that subsequent to the assignment the relator filed a mechanics' lien on the property of the Shooting the Chutes Company for the value of the identical machinery, by reason of which the defendants averred that the relator is now estopped as against the O'Neil Lumber Company from asserting that the title to the machinery had not passed from him. The reply put in issue the new matter. At the conclusion of the evidence for the relator, the circuit court at the instance of the defendants instructed the jury that under the pleadings and evidence the verdict should be for the defendants. Thereupon the plaintiff submitted to an involuntary nonsuit, and the court having refused to set the nonsuit aside, it has appealed to this court.

The evidence introduced by the appellant was to the effect that after the contract was signed the relator commenced to put the machinery in place; that it was placed in a wooden shed, separate from the main buildings; that the electrical plant was completed and put in operation on the twentieth of September, 1896; that the engineer of the relator superintended and controlled the machinery during the time it was operated; that the Shooting the Chutes Company had its engineer observe the working of the machinery during the time it was operated to see if it fulfilled the requirements of the contract; that the machinery did not work smoothly on account of two or three defects; that it consumed too much coal; that the officers of the chutes company made some objections on account of the matters above mentioned, and that while the defects in the machinery were being remedied by the relator the attachment was levied, which was followed in a day or two by the assignment.

As to title counsel for respondents argue in support of the instruction of nonsuit that the question is not at what time, if ever, did the machinery *cease* to be the property of the relator, but when if at all, did it *revert* to him. What was the intention of the parties as to the title to the property? This must be determined by the contract itself and the subsequent conduct of the parties. Was it intended that the title should vest in the Shooting the Chutes Company while the machinery was being tried, subject to the option of the company to reject it if it proved unsatisfactory? This is the position of the respondents. Or was it their intention, as appellant contends, that the title should remain in the relator until the officers of the company upon a trial of the machinery signified their satisfaction and intention to keep it? If the construction contended for by the respondents is right, then the judgment of

nonsuit may be upheld on this ground alone because there is no substantial evidence that the officers of the company manifested an intention *to reject* the machinery. On the other hand, if the appellant is right, then the instruction of the court as to this alleged ground of nonsuit is wrong, for the evidence left the question in doubt whether the officers *had accepted* the machinery prior to the attachment. The language of the contract is that "we (Ramming) are to operate the plant until the Shooting the Chutes Company is satisfied (for a period not to exceed ten (10) days) and upon *turning* the plant over to the Shooting the Chutes Company we are to receive $690," etc. The contract provided that the machinery should be of a certain character and have a certain capacity, and the relator agreed to put it in running order; and in order that there might be no controversy as to the character of the machinery the relator agreed that he would operate it (not to exceed ten days) until the company was satisfied. It was then stipulated that if the machinery stood the test which the relator was required to give it, then it was to be *turned over to* the company, and then the relator would be entitled to the first payment. The trial of the machinery was commenced and the evidence of the relator unquestionably shows that the trial was not completed at the time of the attachment, and that during the trial the engineer of the relator was in charge of the plant, and that the engineer of the company was there merely to see if the test proved satisfactory. When the contract and the conduct of the parties indicating how they interpreted it are considered, we think it reasonably clear that the parties contemplated that the title to the property should remain in the relator until the officers of the company should in some affirmative way manifest their approval of the machinery and an intention to accept it. We therefore conclude that

the nonsuit can not be justified on this ground, and if it can not be upheld on other grounds the judgment must be reversed.

It is argued that the evidence shows conclusively that the machinery had been annexed to the freehold in such a way as to make it a fixture, thus precluding the relator from claiming it as personalty. It is not necessary for us to discuss what is and what is not a fixture. It is sufficient to say that under our construction of the contract the parties agreed that the machinery should not become a fixture until it was accepted by the Shooting the Chutes Company. Richardson v. Koch, 81 Mo. 264.

The last ground of nonsuit is that by filing a mechanics' lien against the machinery the relator is estopped as against the O'Neil Lumber Company to assert that the title to the machinery had not passed from him. Counsel cites authorities to the effect that a party will not be permitted to assume inconsistent and antagonistic positions as to the subject-matter of the litigation. This is unquestionably true where to allow a party to shift his position would be to the prejudice of his adversary. The facts here present no such case. The O'Neil Lumber Company could not possibly have been induced to act as it did on account of anything the relator did. It pursued the only course that was open to it for the collection of its debt. With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. It is so ordered.