State to use v. O'Neil Lumber Co.

THE STATE to use of RAMMING v. O'NEIL LUM-
BER COMPANY et al., Appellants.

Division Two, October 27, 1902.

1. **Unconstitutional Statute:** SPECIAL LAW: DUTY OF COUNSEL.
Where a law enacted for the benefit of a single city is charged to be
violative of that part of the Constitution which prohibits the enact-
ment of any "local or special law regulating the practice or juris-
diction of, or changing the rules. of evidence in any judicial pro-
ceeding or inquiry before courts, justices of the peace, sheriffs," etc.,
it is the duty of counsel to point out wherein the act is in conflict
with that provision.

2. **Sheriff's Levy:** INDEMNIFYING BOND: ST. LOUIS ACT OF 1855.    The
provision of the Schedule of the Constitution of 1875 which con-
tinued in force acts then in force, until altered or repealed by the
General Assembly, applies to the act known as the Sheriff's and
Marshal's Act, passed in 1855 and made applicable only to the city
of St. Louis, and which concerns the taking of an indemnifying
bond by a sheriff in levying an execution.

3. **Res Adjudicata:** FORMER APPEAL TO COURT OF APPEALS.   Where a
defense of estoppel was passed upon in a former appeal of the cause
to the Court of Appeals, that feature of the case on a subsequent
appeal to the Supreme Court will be held *res adjudicata.*

Appeal from St. Louis City Circuit Court.—*Hon. Jas.
E. Withrow,* Judge.

AFFIRMED.

*Lubke & Muench* and *W. Frank Carter* for appel-
lants.

*James P. Maginn* for respondent.

(1)   It is well settled that when a cause has once
been before the appellate court, all matters passed upon
by that court are *res adjudicata* on a second appeal.  (2)
The defense of estoppel was passed upon on the former

appeal. If not, however, still there was no estoppel against plaintiff. State v. Sitlington, 51 Mo. App. 252; Reichla v. Gruensfelder, 52 Mo. App. 43; Bank v. Frame, 112 Mo. 502. (3) Instruction 4, given on behalf of plaintiff, is a correct instruction under the evidence in this case. (4) The act under which the bond sued on was required to be given, found in article 23 of the scheme and charter of the city of St. Louis, page 217 (Revised Statutes 1889), is in no manner invalid or unconstitutional.

BURGESS, J.—The facts as stated by defendants are as follows:

This cause was before the Court of Appeals on a former appeal, reported in 77 Mo. App. 538. On that appeal relator was the appellant, assigning as error the action of the trial court in sustaining a demurrer to the testimony. On the second trial, the one from which this appeal is taken, there was a verdict for relator in the sum of $886.24, from which defendants have appealed.

The action is upon a bond executed by defendants to the sheriff of the city of St. Louis, to protect him against any damages which he might sustain by reason of a levy upon and sale of certain property claimed by relator, and was given in consequence of the "Sheriff's and Marshal's Act," approved March 3, 1855. The sheriff of the city of St. Louis, under a special execution in favor of the O'Neil Lumber Company, returnable to the June term, 1897, in the St. Louis Circuit Court, had levied upon, among other things, as the property of the execution debtor, Shooting the Chutes Company, two boilers, fly-wheel, two heaters, one steam pump and certain other accessories, which relator claimed as his property, and by reason of which claim the sheriff required defendants to execute the bond sued on. Subsequently, and on June 5, 1897, the sheriff sold this property with other property to one John S. Griffin to satisfy said execution, and said Griffin took

possession of the property. Relator now sues for the value of the property claimed by him.

The answer of the defendants set up, first, that this property was long before the levy of the execution, by and with the consent and co-operation of respondent, incorporated into, and made part of all the improvements and erections known as Shooting the Chutes, and in connection with said erections and improvements the said O'Neil Lumber Company and other contractors and subcontractors in common with the respondent had contributed and furnished material, fixtures, engines, boilers and machinery, and performed labor in connection therewith, for all of which each of said parties were entitled to perfect a mechanic's lien upon all such erections and improvements for the price or value thereof if not paid; that upon failure of said Shooting the Chutes Company to pay the said O'Neil Lumber Company and certain other parties, for furnishing material and labor in and upon said erections and improvements, the O'Neil Lumber Company (and such other parties) had duly perfected their lien for the amount and value of the material and labor so furnished, and had thereafter duly obtained judgment in the proper courts for the amount of their respective claims, and that the O'Neil Lumber Company sued out a special execution under its judgment. The answer further alleged that prior to the levy of the execution in favor of the O'Neil Lumber Company, the relator had on March 20, 1897, filed his lien for the identical property mentioned in said bond, that upon the faith of such conduct by relator in filing his said lien, the O'Neil Lumber Company had secured its judgment and levied upon such improvements, and that therefore plaintiff should be estopped from claiming said property as personalty, separate from the erection and improvements. The replication filed by plaintiff admitted the filing of the lien and averred it was done unadvisedly; and that title to said property had never passed out of him by reason of his failure to comply with the terms of his contract, under which it was sold.

Upon the trial, the execution of the bond sued on was admitted, but its introduction in evidence was objected to on the ground that the act under which it was given is unconstitutional and has been repealed, which objection the court overruled.

The contract between the relator and the Shooting the Chutes Company was next offered in evidence, this being the contract under which the property in question was furnished to Shooting the Chutes Company. The evidence on behalf of relator was to the effect that the terms of the contract under which this machinery was to be supplied were never complied with by relator, and that the machinery had never been accepted by the Shooting the Chutes Company. It further showed that the relator had filed a lien for this identical property, and that the Shooting the Chutes Company had made an assignment, and that while that assignment was pending in the circuit court of the city of St. Louis, an order had been made by the court allowing relator to remove this property on his acquitting Shooting the Chutes Company for any liability therefor, and that after this order had been made by the circuit court, relator had filed a motion to set the same aside, alleging that acquiescence in said order by him would subject him to great and unjust loss, and repudiating the same. The evidence further showed that the cost of taking down and removing this machinery would be from $75 to $125.

Upon the trial, defendants offered to show that the actions which they took in the perfecting of their lien against Shooting the Chutes Company, and levying execution thereunder, was done on the faith of what relator had theretofore done of record—that was, the filing of the petition on November 30, 1896, in the assignment proceedings, and of his mechanic's lien on March 20, 1897; and on the faith and knowledge that relator was still at the time in position to institute a suit to enforce his lien claim. This offer of proof was objected to by relator; the objection was sustained by the court.

The testimony on behalf of defendants showed that there had been an acceptance of the machinery furnished by relator; that the plant installed by him was in operation for several nights while Shooting the Chutes Company was conducting its place of amusement.

It is claimed that while the act known as the Sheriff's and Marshal's Act is embraced in the Scheme and Charter of the city of St. Louis, it does not properly form a part of the same. This act was passed in 1855; was made applicable, and applied only to the county of St. Louis. The first, second and third sections read as follows:

"1. When any sheriff, marshal, constable or other duly authorized officers, shall levy any execution or attachment on any personal property, and any person other than the defendant in such execution or attachment shall claim such property or any interest therein, such officer may demand of the plaintiff or his agent, in such execution or attachment, a sufficient indemnification bond, with at least two good and sufficient sureties, to be approved of by such officer, and may refuse to execute such execution or attachment until such indemnification bond be given.

"2. Such bond shall be made payable to the State of Missouri, conditioned that such plaintiff will pay to such claimant all damages that he, the said claimant, may sustain in consequence of such levy, and in consequence of any sale which may be made under or by virtue of such execution or attachment; and the officer taking such bond shall return the same with such execution or attachment.

"3. No claim made to any personal property levied on as aforesaid shall be valid or lawful as against such officer, unless such claimant or his agent shall set forth his claim in writing, verified by the affidavit of such claimant or his agent, describing the property claimed and stating his interest therein, and whether it is in the whole or only part thereof, and stating also that he is in good faith the lawful owner of the interest claimed by him in said property; that the defendant in

such execution or attachment has no right or title, directly or indirectly, in the interest in said property claimed by said claimant, and that such claim is not made in collusion with said defendant for the purpose of vexing, hindering or delaying the plaintiff in obtaining his just rights."

It was made applicable to the city of St. Louis only, in 1859. [Laws 1858, 9, p. 440, sec. 6.]

It is said that the act can not stand under the Constitution of 1875 because violative of section 53 of article 4 of that instrument, which provides that "The General Assembly shall not pass any local or special law regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators or other tribunals." . . .

It is not suggested wherein the act in question is in conflict with the provisions of the Constitution quoted, nor are we able to perceive that section 1, of the Schedule, Revised Statutes 1889, vol. 1, page 110, has no application to the act under consideration, nor that its provisions are in any way inconsistent therewith, and being in force at the time of the adoption of the Constitution, it was by the terms of that section continued in force until altered or repealed by the General Assembly. Nor was the act repealed by the adoption of section 449, Revised Statutes 1879 (sec. 572, R. S. 1889), which provides that any person claiming property attached may interplead in the cause verifying the same by affidavit, and issues may be made upon such interplea, and for these reasons: the bond provided for by the Act of 1855 was for the protection of the sheriff making the levy, while section 572, Revised Statutes 1889, simply provides that "*any person* claiming personal property attached may interplead in the cause." There is no conflict between them, but they are entirely different and for different purposes.

Defendants invoke the doctrine of estoppel in their behalf, and insist that the court erred in excluding evidence offered by them tending to sustain that defense.

But this feature of the case seems to have been adjudicated upon by the Court of Appeals when the case was before that court, and must be considered as res adjudicata.

We find no error in giving or refusing instructions, as those that were given covered every feature of the case, and were fair to both parties.

The judgment should be affirmed and, it is so ordered.

All of this Division concur.