State ex rel. McDaniel v. Schramm.

---

THE STATE ex rel. LAWRENCE McDANIEL, Circuit Attorney of St. Louis, v. FRANK SCHRAMM.

In Banc, December 12, 1917.

1. **ASSESSOR: City of St. Louis: City or State Office:** Under the Constitution and statutes of this State and the charter of St Louis the assessor in said city does not derive his title to the office from the general statutes, as do assessors in other parts of the State, but from the charter framed in harmony with the Constitution.

2. ———: **Proviso Excepting St. Louis Out of General Statute: Enlargement to Include Said City.** The proviso of the general statute of 1900 (Sec. 11341, R. S. 1909) requiring the election at "the general election" of a county assessor in "the several counties of this State" (said proviso declaring that "this section shall not apply to the city of St. Louis"), if held to be invalid (not necessary to be decided), then the remainder of the act cannot be held to enlarge the territory embraced so as to include said city and so as to authorize the qualified voters of said city to elect an assessor at the general election in November or the Governor to appoint respondent to the office in case they do not so elect.

3. ———: ———: ———: **Intention as Manifested by Proviso.** Even though a proviso excepting a part of the State from the operation of a general statute be invalid, yet as it expressly excepts that part, it demonstrates the legislative intention not to apply the

general provisions of the statute to the territory so excepted, and for the courts, by eliminating the proviso, to make the remainder apply to the whole State in its entirety, would be to give to the act an effect that is manifestly contrary to that intention, and would be judicial legislation.

4. ——: ——: ——: **Validity of Proviso.** In view of the fact that the proviso to the Assessor's Act of 1900 (Sec. 11341, R. S. 1909) expressly excepts the city of St. Louis from the operation of the act, and that the remaining part of the act cannot be enlarged to include the territory of said city or to authorize the Governor to appoint the respondent assessor for said city, it is wholly unnecessary, in a *quo warranto* to oust said appointee, to determine the constitutionality of said proviso. Yet it is certain that if the proviso is void, the whole act is void.

*Held*, by FARIS, J., that the proviso is not void; that long prior to the adoption of the Constitution of 1875 the city of St. Louis had been excepted from the operation of the general laws governing the election of assessors, and that Constitution did not nullify such exceptions unless they were inconsistent with the city charter or were repealed expressly or by necessary implication by some statute, and there is no such repealing statute, and the exception is embraced in the charter; and that, barring the effect of Section 11 of the Schedule, the Constitution operated with no more potency to repeal an existing special law than it did to repeal a general law; nor does the enactment of a general law *ipso facto* and necessarily repeal a local or special law, but in order to have that effect the two must be in irreconcilable conflict, or the legislative intent to prescribe one single authoritative rule must clearly appear.

*Held*, by WALKER, J., concurring, that the general statutes pertaining to the office of assessor would be utterly inapplicable to such an officer in the city of St. Louis, and incapable of enforcement there, and a review of them manifests a steadfast legislative purpose from the time of the adoption of the Constitution of 1875 to the present, to leave the control of the assessment of property to the city charter and ordinances; and, since a ruling that said proviso is invalid would necessitate the amendment of the entire body of the law relating to the duties of the assessor and the assessment of property, and prior to such amendment the city would be without power to assess property for purposes of taxation, the validity of the proviso should be upheld if it can be sustained under any reasonable interpretation.

*Held*, by WILLIAMS, J., dissenting, with whom GRAVES, C. J., and BLAIR, J., concur, that the proviso to Sec. 11341, R. S. 1909, is unconstitutional, and that the remaining portion

of the act constitutes a valid statute complete in itself and
is of such character as to justify the belief and presumption
that the Legislature would have enacted it even though the
proviso had been omitted or its invalidity been known.

## Quo Warranto. -

WRIT GRANTED.

*Spencer & Donnell* for relator.

(1) It is admitted that the State has the power to
control the election of assessor of the city of St. Louis
and to regulate the conduct of the office in precisely the
same manner and to the same extent as it has power in
relation to the assessors of the several counties of the
State. (2) The State has expressly refused to act in re-
gard to the assessor of St. Louis. Ever since the city
was separated from the county in 1876 the State has ex-
pressly exempted the city from the statutory provisions
relating to the office of assessor. Sec. 11341, R. S. 1909,
and all the provisions of article 2, chapter 117. (3) The
charter of St. Louis, both the charter of 1875 and the
present charter of 1914, expressly make the city assessor
a city office and provide for the election of the assessor
and for the term of the office. Charter 1876, art. 4, sec. 1;
art. 5, secs. 15, 18; Charter 1914, art. 15, secs. 4, 5, et
seq; Art. 8, secs. 1, 2, 3, et seq. (4) The provisions of
the charter are operative until the State sees fit to regu-
late the office and to legislate upon the subject itself.
State ex rel. v. Koeln, 270 Mo. 174; State ex rel. v. Wat-
son, 71 Mo. 471; State ex rel. v. Walsh, 69 Mo. 408;
State ex rel. v. Finn, 8 Mo. App. 341; State ex rel. v.
Mason, 4 Mo. App. 377. (5) If the provision of Sec.
11341, R. S. 1909, which exempts St. Louis from its opera-
tion, is unconstitutional, then the entire article is uncon-
stitutional and there is no statutory provision either for
the city or for the counties relating to the office of as-
sessor. Henderson v. Koenig, 168 Mo. 372; Township of
Lodi v. State, 5 N. J. L. 402, 6 L. R. A. 57; State ex rel.
v. Gordon, 236 Mo. 170. (6) The exemption of St. Louis
by the Legislature from the general provisions regulat-

ing county assessors is constitutional and valid. The State can legislate directly for St. Louis. State ex rel. v. Mason, 153 Mo. 52; Kansas City v. Stegmiller, 151 Mo. 204; State v. Rawlings, 232 Mo. 560; Ex parte Loving, 178 Mo. 194; State ex rel. v. Mason, 155 Mo. 486; Spaulding v. Brady, 128 Mo. 653; State ex rel. v. Miller, 100 Mo. 439. (7) The question is as to whether respondent is entitled to the office of assessor and the burden is on him to show good title to it, on the ground which he asserts, viz., that a vacancy existed in the office of assessor which authorized his appointment by the Governor. State ex rel. v. Powles, 136 Mo. 376. (8) The charter provisions are in harmony with the Constitution and laws of the State, for although the Constitution specifically provides (Art. 9, sec. 25) that the General Assembly shall have the same power over the city of St. Louis that it has over the counties of the State, and although the Assembly could, without doubt, assume the exercise of said power at any time, yet it has in fact expressly refused to exercise said power with relation to the office of assessor of St. Louis, and has made no provision whatever concerning the election of said official. Constitution, art. 9, secs. 20 and 22; Sec. 11341, R. S. 1909; State ex rel. v. Koeln, 270 Mo. 174; State ex rel. v. Walsh, 69 Mo. 408. (9) Sec. 11341, R. S. 1909, is entirely constitutional, and its provision excluding St. Louis from its operation is valid and binding. State ex rel. v. Mason, 153 Mo. 52; Kansas City v. Stegmiller, 151 Mo. 189; Ex parte Loving, 178 Mo. 203; State v. Rawlings, 232 Mo. 560; State ex rel. v. Mason, 155 Mo. 486; Spauling v. Brady, 128 Mo. 653; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Roach, 258 Mo. 565; State ex rel. v. Telephone Co., 189 Mo. 99; St. Louis v. King, 226 Mo. 344. (10) If the proviso in Section 11341 which excludes the city of St. Louis be eliminated, the remainder of the section cannot be so construed as to include the city. Sec. 8057, R. S. 1909; State ex rel. v. Gordon, 236 Mo. 161; 36 Cyc. 977; 26 Am. & Eng. Ency. Law, 570.

*Charles H. Daues, Amicus Curiae.*

*Wilfley, McIntyre & Nardin* and *E. F. Nelson* for respondent.

(1) The Constitution of 1875, in addition to providing authority for the adoption of a special charter by the city of St. Louis, provides that the city shall exercise some of the functions of counties with reference to the State government, and for such purposes the city is a political subdivision of the State as well as a municipal corporation. Sec. 23, art. 9, Constitution 1875; State ex rel. v. Dillon, 87 Mo. 487; State ex rel. v. Bus, 135 Mo. 337; Gracy v. St. Louis, 213 Mo. 387. (2) The Constitution expressly provides that the city of St. Louis shall be subject to the general laws of the State, and that all special laws applicable to St. Louis County shall be suspended by the Scheme and Charter. Secs. 20 to 25, art. 9, Constitution 1875. (3) The official who assesses property for the imposition of State taxes is a county official, and, as such, the establishment and regulation of his office can be accomplished only by the General Assembly. State ex rel. v. Imel, 242 Mo. 300; State ex rel. v. Koeln, 270 Mo. 174; Sheboygan Co. v. Parker, 70 U. S. 93; Sec. 14, art. 9, Constitution 1875. (4) The city of St. Louis, as a political subdivision of the State, is in no special class and legislation undertaking to exempt it from general laws, applying to the exercise of powers or functions peculiar to such subdivision, is in violation of the Constitution. State ex rel. v. Tele. Co., 189 Mo. 99; St. Louis v. King, 226 Mo. 344; Sec. 53, art. 4, Constitution; Kansas City v. Stegmiller, 151 Mo. 189; Henderson v. Koenig, 168 Mo. 372; Township of Lodi v. State, 51 N. J. L. 402; State ex rel. v. Miller, 100 Mo. 439. (5) An invalid proviso attached to a general statute does not invalidate the whole statute, but only the proviso fails. State ex rel. v. Gordon, 236 Mo. 161.

BOND, J.—This is a *quo warranto* instituted by the circuit attorney of the city of St. Louis, to determine the right of respondent to the office of assessor for that city. By the charter of St. Louis, adopted in 1876, the office of assessor in that city was created and provision was made for filling the same by election thereafter held

272 Mo.—35

at intervals of four years. In accordance with this pro-
vision of the charter, respondent was elected and in-
stalled as such assessor in April, 1913. His term ex-
pired in the spring of 1917. Pending the expiration of
respondent's term, the city of St. Louis adopted a new
charter, providing, among other things, that the office of
assessor should after the expiration of the term of re-
spondent become appointive, with authority in the mayor
of the city to make proper appointment thereto. Pur-
suant to the provision the mayor appointed an assessor,
who qualified and demanded the office of respondent whose
term had then expired. Respondent, however, obtained
an appointment from the Governor on April 16, 1917, and
claiming thereunder, refused to surrender the office, in-
sisting that the Governor had the legal authority to ap-
point him upon the expiration of his term by virtue of
the provisions of Section 11341 of the Revised Statutes
of 1909, which respondent claimed made it necessary to
elect an assessor quadrennially in the fall, instead of in
the spring; that his own election and that of all previous
assessors who had been elected in the city of St. Louis
since the adoption of its charter in 1876 were invalid.

I. Since the adoption of the Constitution in 1875, the
city of St. Louis, by virtue of the provision of that in-
strument, has become a city distinct from the four classes
of cities into which all the other cities of the State are
divided by the Constitution. It has become, also, the pos-
sessor of a distinct charter, the creation and adoption of
which was provided for by article 9, sections 20, 22, 23
and 25, of the Constitution of 1875. That instrument
further provided, upon the adoption of such charter
and the accompanying scheme of separation from the
county of St. Louis, that the provisions of the new char-
ter should supersede and take the place of all special laws
previously applicable in the former territory of St. Louis
County then added to that city by the act of separation,
and the previous charters and amendments thereto of the
city of St. Louis. [Ibid., sec. 20.] It further provided
that the charter of St. Louis to be adopted in virtue of
its authority, should only be *amended* in the manner

pointed out in that instrument. [Ibid., sec. 22; Laws 1901, p. 263; Laws 1905, p. 320; St. Louis v. Dorr, 145 Mo. l. c. 477, and cases cited.]

Recognizing, however, that the territory of the municipality thus authorized—although separated from the county of St. Louis—would continue under the control of the future Legislatures of the State of Missouri in all respects not otherwise provided by the Constitution, an express affirmance of such legislative authority was inserted in the provisions of the Coustitution. [Ibid., sec. 25.] The city of St. Louis is the only one in the State which by name is authorized by the Constitution to exercise the specific powers granted to it by that instrument. [Ibid., sec. 20.] A general enabling act was, however, inserted to embrace other cities which, although not named, should fall within a constitutional class. [Ibid., sec. 16.] Cities thus constitutionally chartered form classes distinct and separate from the four divisions pre-. scribed by the organic law (Ibid., sec. 7), and their respective charters have all the efficacy of special grants by the Legislature. [State ex rel. v. Mason, 153 Mo. l. c. 52; Kansas City v. Stegmiller, 151 Mo. 189; State ex rel. v. Mason, 155 Mo. 486, affirmed in State ex rel. v. Roach, 258 Mo. l. c. 565.]

The new municipality thus organized adopted by the vote of the people, a charter which provided a complete plan for the government of the city in all of its departments and for the election of officers necessary to put such plan into practical operation.

No department of the city government was more essential to its sustenance and vigor than that providing a basis for the collection of its revenues. The officer charged with performance of these duties is the assessor of taxes, nine-tenths of which belong to the city of St. Louis exclusively and without which it could not exist. Incidentally and as a part of his duties, his assessment includes a comparatively insignificant revenue for the State at large. Previous to the adoption of the charter, his election was provided for by laws specially applicable to the county of St. Louis. [Laws 1871-2, p. 88, sec. 21.] Upon the adoption of the new charter, that law was sub-

stitued by the following provisions: Scheme and Charter, art. 5, sec. 15; Scheme and Charter, art. 4, sec. 1; Scheme and Charter, art. 1, sec. 8.

The new officer substituted by the charter for the performance of the duties of the assessor of St. Louis County, was designated as "The President of the Board of Assessors." His office was declared by the scheme and charter to be a "city office" and under the control of the city government, and he was required to perform all his duties "in accordance with the general laws" and his qualifications and duties were specifically prescribed. [Scheme and Charter, art. 5, secs. 17, 18, et seq.] The date of the elections of the President of the Board of Assessors and other elective officers designated in the scheme and charter, was fixed by that instrument to begin on the first Tuesday in April, 1877, and every four years thereafter. [Scheme and Charter, art. 2, sec. 1.] Under the express language of the Constitution, the charter requirements in these respects superseded and took the place of the previous special laws on the subject, applicable to the county of St. Louis. [Constitution 1875, art. 9, sec. 20.] In an accordant spirit, the Legislature of the State has never undertaken in any act, to alter or control the election of the President of the Board of Assessors (the successor by charter to the previous assessor of St. Louis County), but in every intervening act has expressly stated that such act providing for the election of an assessor in other counties of the State, should *not* include the city of St. Louis. [R. S. 1879, sec. 6678; R. S. 1889, sec. 7524; R. S. 1899, sec. 9137; R. S. 1909, sec. 11341.] And in the last of such enactments (the one under review in this case) has explicitly excepted the city of St. Louis. It is under this enactment that respondent claims, after having served four years by election, according to the charter, in the spring of 1913, that he is now entitled, after the expiration of his term, to hold over as appointee of the Governor, because his own and all prior elections for forty years were invalid in that they were held in the fall instead of the spring as was provided by the charter in fixing the date and the

beginning of the terms of all the officers for the government of the city of St. Louis.

The sole basis of his contention (the burden of establishing which in a proceeding like the present is cast upon him) is the following statute:

"Election of assessor. At the general election in the year one thousand nine hundred, and every four years thereafter, there shall be elected by the qualified voters of the several counties in this State a county assessor, who shall hold his office for a term of four years, and until his successor is elected and qualified, unless sooner removed from office; and no person elected to said office of assessor shall hold said office more than two successive terms: Provided, that this section shall not apply to the city of St. Louis." [R. S. 1909, sec. 11341.]

As to this statute, the contention of respondent is, that the proviso thereto is unconstitutional and void; and if the proviso be held unconstitutional, then the remainder of the statute would be at once extended and become an operative law which would embrace the territory of the city of St. Louis (excluded by the proviso), as well as every other portion of the State. Or, to put the matter in another form, the position of respondent is: first, that the proviso of the above statute is unconstitutional; second, upon that assumption, he then contends that the portion of the act above the restrictive terms of the proviso at once operated to include the territory of the city of St. Louis which was excluded by the proviso; whereupon the act, with its specific and express purpose thus defeated, became, by the stretching of its terms, a law fixing the date of the election of assessor of the city of St. Louis the same as that for the general election of state officers, instead of the date provided in the scheme and charter.

If there is any valid ground for the contention that the proviso of the above act is unconstitutional (not now necessary to be ruled) it would still be impossible, either in reason or upon authority, to sustain the second position affirmed by respondent, i. e. that the annullment of the proviso would *enlarge* the territory subject to the

act. As this latter contention is decisive of the matter presented, it will be discussed first.

What would be the effect in law of a holding that the proviso above stated is unconstitutional? Plainly the only effect of such a decision would be to abolish the operative force and validity of the proviso. Such a holding would not and could not detract from the meaning of the terms of the proviso considered as a clear and express statement of the purpose and object of the Legislature in enacting the law of which it is a part. The legal validity of the proviso is one thing; its meaning as a definition of the intention and object of the legislative body is another and wholly distinct matter. As an avowal and expression, clear and conclusive of the intent and aim of the Legislature in framing the act, it would still exist, even if it were held to have no constitutional vigor as a law.

In the instant statute, by the terms of the proviso, the Legislature, in unequivocal language, declared that the act to which it was attached, should *not* embrace the city of St. Louis. The effect of this express declaration is identically the same as if the Legislature, instead of enacting the law as it now stands, had put it in the form of an act whose operation should extend over all of the one hundred and fourteen counties of the State mentioning them by name, and making no reference or allusion to its operation in the city of St. Louis, in which event that city would not have been the subject of the act. Neither could it be more so if, as was done, it was expressly excepted therefrom. Whatever might be thought of the validity of an enactment in that form, no one would have the temerity to claim that it evinced or was consistent with a purpose on the part of the law-making body to extend its operation over the territory of the city of St. Louis, and no court could so decide. But it is only upon the successful maintenance of such a theory that respondent can claim any right or title to the office of assessor in the city of St. Louis.

The rules relating to the severance of portions of an act of the Legislature as invalid, and the upholding

of the remainder, have been repeatedly announced in this and other jurisdictions. In general this may be done only when the part of the law separated as invalid, is wholly independent of a remainder constituting a *complete* act of legislation in and by itself, in accordance with the intention of the law-making body at the time of its passage; for if it should appear from the terms of the act as a whole that the two portions were interdependent, or that the Legislature never intended to pass the one without the other, then the rule is unvarying that the act must stand or fall as a totality. This general rule applies only to the saving of a complete legislative enactment. It has no application when a portion of any act sought to be upheld is incomplete or imperfect; for the omission of the Legislature to exert its exclusive faculty to make a law, cannot be supplied except by a succeeding Legislature. Hence if it appears from the face and terms of the act (a portion of which is sought to be elided as unconstitutional) that the remainder was not designed in itself to be a complete act of legislation, either as to *subject* or *territory,* then it is self-evident the court could not supply the failure to legislate and such act would have to be upheld in its entirety or not at all. It is not logically possible to take any other view of this question.

Now in the matter in hand the Legislature, as appears from the act under review, in the simplest terms stated that the territory of the city of St. Louis should not be governed by it. Hence as to so much of the State of Missouri as is contained in the boundaries of that city, there was a total failure on the part of the Legislature to make any law whatever. The present case cannot, therefore, fall within any rule of construction applicable to the separation of a complete act from an invalid portion of the same act; for here the Legislature has refused to make a law extending over the city of St. Louis. Consequently no court can now make a law which the Legislature adjourned without enacting, or, in other words, make a law as to that territory over

which the lawmaking body failed and refused to exercise its power of legislation.

It must not be overlooked in the instant case, that the question to be solved is not whether the Legislature had the power to act, but whether it did, *in fact*, legislate as to the territory of St. Louis when the statute under review was passed. The terms of that statute declare to a certainty that such portions of the State's domain was *not* embraced within the scope of the act. The question as to whether or not it should be included, was directly presented to the Legislature yet the fact is indisputable that the lawmaking body, after consideration of that question, expressly refused to make a law governing it and so stated in the act itself. In view of its express refusal to legislate as to this locality, what the Legislature might have done is a wholly futile inquiry devoid of any logical or legal consequence. The fact that it did not make a law for the city of St. Louis, but positively declined to include that territory, is apparent and undeniable from an inspection of the language and terms of the act under review. Having stamped that decision in the very act itself, it is impossible, except by perversion of its terms and ascribing to its words a meaning which is contrary to their intrinsic sense and import, to hold that the Legislature included or intended to include the city of St. Louis as the subject of the act. It follows that the entire theory of respondent, that the statute under review, upon a holding of the invalidity of the proviso would, *without further legislative action,* become a different law including the excluded territory, is built upon a tissue of sophisms and fallacies and contradiction of terms relied upon to prove that legislative nonaction meant affirmative action; and exclusion meant inclusion.

The settled rule of law sustaining the conclusion that the act under review is inoperative as to the territory of the city of St. Louis, whether its proviso should be held valid or invalid, is clear and controlling, as appears from the text-books and decisions, and rests upon the results of correct reasoning when applied to statutes

of the character of the one under review. The principle is thus stated by a standard writer:

"If, by striking out a void exception, proviso, or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to *subject* or *territory,* its operation is not in accord with the legislative intent and the whole would be affected and made void by the invalidity of such part." [1 Lewis's-Sutherland's Stat. Const. (2 Ed.), sec. 306, p. 597.]

Again: "One important class of cases in which the severability of valid and invalid portions of an act and, the determination of the legislative intent are involved, consists of statutes containing invalid exceptions or provisos; the general rule is, that if such proviso operates to limit the scope of the act in such manner that by striking out the proviso the remainder of the statute would have an undue scope either as to the *subject* or *territory* then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent." [6 R. C. L. p. 129, sec. 127, Title: Constitutional Law.] (Italics ours.)

The Supreme Court of the United States in considering a case where the first section of an act embraced all persons, while the ninth section declared the statute should not apply to agriculturists or live stock dealers, said:

"If the latter section be eliminated as unconstitutional, then the act if it stands will apply to agriculturists and live stock dealers. Those classes would in that way be reached and fined, when, evidently the Legislature intended that they should not be regarded as offending against the law, even if they did combine their capital, skill or acts in respect of their products or stock in hand. Looking then at all the sections together, we must hold that the Legislature would not have entered upon or continued the policy indicated by the statute unless agriculturists and live stock dealers were excluded from its operation and thereby protected from prosecution. The result is that the statute must be regarded as an entirety and in that view it must be adjudged to be unconstitutional" on the ground that the exception as to agriculturists

and live stock dealers was unconstitutional. [Connolly v. Union Sewer Pipe Co., 184 U. S. l. c. 565.]

In quoting and adopting the foregoing rule the Supreme Court of Montana said:

"This is a recognition of the soundness of the proposition that the courts may not by process of interpolation or elimination, make statutory provisions apply and extend to subjects not falling clearly within their terms; for by so doing they would, to this extent, usurp the functions of the lawmaking department of the government." [State v. Cudahy Packing Co., 33 Mont. l. c. 187.]

The matter came again before the Supreme Court of the United States in reviewing a section of the code of Georgia which, in referring to the employment of pilots, excepted from the operation of the act the territory between the ports of that State and South Carolina. Upon the contention that this section might be disregarded, leaving the residue of the act valid, the Supreme Court of the United States said:

"But the insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the Legislature of Georgia, the statute is made to enact what confessedly the Legislature never meant. It confers upon the statute a positive operation *beyond* the legislative intent and *beyond* what any one can say it would have enacted in view of the illegality of the exceptions. We are therefore constrained to hold that the provisions of section 1512 of the Code of Georgia cannot be separated so as to reject the *unconstitutional exceptions* merely and that the whole section must be treated as annulled and abrogated." [Spraigue v. Thompson, 118 U. S. l. c. 94, 95.]

The Supreme Court of Wisconsin having under review an act providing for the erection of county bridges, which contained a proviso "this act shall not apply to the county of Grant," in answer to the contention that the proviso might be disregarded as unconstitutional, leaving an otherwise valid act, said: "In the present case there is no room for the application of this rule, for the reason that the Legislature has not enacted that the statute

should extend to Grant County, but has expressed a contrary intention. By no possible construction can the statute be held to be operative in Grant County." It was therefore held that the entire statute was invalid. [State ex rel. v. Sauk County, 62 Wis. 376.]

This decision was quoted and adopted by the Supreme Court of North Dakota, in Edmonds v. Herbrandson, 2 N. D. l. c. 281. It is a ruling on the exact question presented in this case, which is whether an act of the Legislature excepting the territory of the City of St. Louis can be held valid if such an exception is unconstitutional. It is in precise conformity to the rule above quoted from the text-writers and declared by the Supreme Court of the United States and affixes to the act under review the legal conclusion arising from an interpretation of its language.

It is wholly unnecessary to pass upon the contention of respondent that the proviso of the act under review is unconstitutional; for having shown that if so, nothing is left of the act itself as an entirety, since we could not make it apply to the city of St. Louis without judicial legislation, it follows upon that conclusion that respondent would have no greater authority to hold the office in question than if the act was constitutional and valid in all respects. In neither case would the election of an assessor for the city of St. Louis be governed by the terms of the act, for if valid as an entirety, St. Louis is excepted from its provisions, and if invalid as to the proviso only, then the legislation in the body of the said act did not extend to the "*subject or territory*" of the city of St. Louis and cannot be so enlarged by any process of reasoning or construction in the light of the law as expounded above.

II. From what has been said there is no escape from the conclusion that respondent is not entitled to the office, his right to which is questioned by the *quo warranto* filed in this case, and that he should be ousted from further tenure thereof.

The cases cited by respondent in support of his claim of the unconstitutionality of the proviso can have no relevancy to the solution of what would be the

*extent* of the act if that were eliminated. However, it is not out of place to say that in the case of State ex rel. v. Koeln, 270 Mo. 174, the exact opposite of the question before us was presented. In that case an act was under review which *in terms* was *generally* applicable to all parts of the State. It was, therefore, held to be susceptible of a construction that the Legislature intended to include St. Louis (it being an integral part of the State of Missouri) when it passed that act. [R. S. 1909, sec. 11432.] After quoting this section and also the rule of statutory construction stated in Section 8057 of the Revision of 1909 (founded on the Act of the Legislature of 1879) to the effect that the use of the word "county" in "any law general in its character to the whole State, shall be construed to include the city of St. Louis unless such construction be inconsistent with the evident intent of the law or some law applicable to such city," it was held, in the absence of any showing of "evident intent " that the State-wide law applicable to the election of collectors of the revenue should *not* include the city of St. Louis, that the act then under review would embrace that territory. In announcing that conclusion the learned writer of the opinion said:

"Whether the General Assembly had exercised its power to legislate upon this subject prior to 1905, we need not here stop to consider. We have no hesitancy in saying that by the Act of 1905, supra, it *did* exercise such power."

It is apparent at the merest glance that the point decided in that case has no bearing whatever upon the interpretation of the act under review in the present proceeding. In the Koeln case, by its unrestricted terms the act under review was held to include the State at large. In the present case the act, by its terms, is confined to the portion of the State lying outside the city of St. Louis, thereby demonstrating the fact and intention of the Legislature as to the limitation of the law. In so acting and stating its purpose, the Legislature complied with the rule prescribed by that body in 1879 (immediately following the separation of the city and

county) for the construction of future enactments relative to the territory of the city of St. Louis. [R. S. 1909, sec. 8057, par. 19.] In said opinion it is also remarked *arguendo,* in reference to the special laws which the charter of the city of St. Louis substituted for those previously applicable to the county of St. Louis: "This undoubtedly was a very wise provision making for harmony rather than chaos and confusion upon the occurrence of the act of separation then in contemplation." It was then held that it was thereafter competent for the Legislature to change such substituted special laws in a legal way, and that it *"did"* so by the *general* terms of the Act of 1905. It is apparent that ruling is wholly foreign to the question presented by the terms of the act before us.

The case of State ex rel. v. Roach, 258 Mo. l. c. 565, involved no question of the *failure* of the Legislature to enact a law covering the territory of the city of St. Louis, as is the question presented here; but dealt exclusively with the provisions of the act of the Legislature of 1913 (Laws 1913, p. 334), purporting to establish a non-partisan judiciary in *all counties and cities of the State,* based upon a classification by population. It is evident that the question then presented has not the most remote analogy to the present case, which turns on the fact of non-legislation as to a particular locality by virtue of its express exclusion from the terms of the act. As has been said, the crux of this case is not the power of the Legislature by a valid enactment to pass laws which shall include all the territory of the State, but whether in the particular act under review it, in fact, did so.

Neither is there anything in common between this case and the decision by a divided court (State ex rel. v. Gordon, 236 Mo. 142), for the point in judgment there was whether the Legislature, after the passage of a general law making a full appropriation for all the uses of the game warden's office, could by subsequent proviso prevent the use of these funds by a particular individual. In the present proceeding the Legislature has

not, by a *general* law, embraced the territory of the city of St. Louis, but has exscinded that portion of the State from the operation of its act, as to which it has been shown that whether this limitation was valid or invalid, the lack of affirmative legislation could not be supplied by the courts.

Being unable to see, under our form of government, any method by which such *affirmative legislation* can be had except through the lawmaking body, it must follow that the respondent is not entitled to the office predicated upon a contrary assumption and that the writ of ouster should be granted.

*Walker* and *Woodson, JJ.*, concur; *Faris, J.*, concurs in separate opinion; *Williams, J.*, dissents in separate opinion, in which *Graves, C. J.*, and *Blair, J.*, join.

FARIS, J. (concurring)—I have had much difficulty with this case. It is a close and vexing one, wherein the controlling and vital questions up for solution are colored and affected by a multitude of converging, but conflicting, rules of law, whereof a selection involving the utmost nicety of discussion must be made. Against my own predilections, held at the argument of the case, I have been constrained to concur with BOND, J., but I shall take the liberty, even at the risk of repetition, of setting out my reasons for this concurrence.

When the Constitution of 1875 went into effect, there existed in the body of the general statutes of this State, which provided for the election of assessors, a special exception excluding the county of St. Louis from the provisions thereof; which statute, with the exception mentioned, read thus:

"There shall be elected by the qualified electors of the several counties in this State, except the county of St. Louis, at every general election for members of the General Assembly, a county assessor, and every such election shall be conducted, in all things, according to the laws regulating the election of other county officers." [Sec. 21, p. 88, Laws of 1872.]

It is clearly and I think accurately conceded by the learned counsel for both parties to this controversy: (a) that this exception was entirely valid under the constitutional provisions in force when it was passed; (b) that the special statute to which this exception referred was rendered inoperative and superseded in the city of St. Louis, by the charter provisions of that city, upon the subject of the selection of an assessor; (c) that such supersession by the charter was expressly authorized by the Constitution itself (Constitution 1875, sec. 20, art. 9); (d) but that the Legislature has the authority to pass a general statute upon this subject, which may include the city of St. Louis, and in its turn supersede such charter provisions; and (e) therefore the charter provisions are still in force and govern this case, and this writ should be made peremptory, *unless* the Legislature has passed a constitutionally valid statute upon the subject, which had the effect to repeal and supersede the charter. Relator contends there has been no legislative intent to pass such a statute and that no such statute has been enacted; respondent contends that such a statute has been passed, but that it is unconstitutional. Within this narrow compass then lies the whole of the contentions confronting us.

Passing over the mere verbal change, made in 1879 (whereby the word "county" was stricken out and the word "city" put in lieu thereof, Sec. 6678, R. S. 1879, as well as the passage in 1895 of a new act repealing inconsistent provisions, Laws 1895, p. 41, whereby the term of office of all assessors in the State, *except in the city of St. Louis,* was made four years instead of two years, and the incumbents of that office thereafter rendered ineligible to hold any county office whatever for a period of two years after the expiration of their terms as assessor), we come to the Act of 1899 (Laws 1899, p. 324; Sec. 11341, R. S. 1909), which was in force when this controversy arose. We do this because, however true it is that much of the argument necessary to be made might apply with equal force to the Act of 1895, supra, the fact of the

passage thereafter of the existing law renders a discussion of prior laws wholly academic. Whether the provisions of the charter of the city of St. Louis have or have not been repealed, or whether the Act of 1899, which it is urged repealed them, was afflicted with constitutional defects, are the questions vexing us, and these difficulties exist, if they exist at all, in equal degree in the subsisting law. For this reason we may sweep aside the consideration of any amendment, or change in this law, except those affecting the existing statute (Sec. 11341, R. S. 1909) upon the subject.

The Act of 1899, after especially repealing all existing laws governing the election of assessors in this State, in a separate section provided thus:

"At the general election in the year one thousand nine hundred, and every four years thereafter, there shall be elected by the qualified voters of the several counties in this State a county assessor, who shall hold his office for a term of four years, and until his successor is elected and qualified, unless sooner removed from office; and no person elected to said office of assessor shall hold said office more than two successive terms: Provided, that this act shall not apply to the city of St. Louis." [Laws 1899, p. 324, sec. 1; Sec. 11341, R. S. 1909.]

As stated above, learned counsel for the relator frankly concede that pursuant to the delimitations of the charter-making power conferred on the city of St. Louis by the Constitution (Constitution 1875, secs. 20 and 22, art. 9; Laws 1905, p. 320), and of the retention in the Legislature of the same authority of control over such city as by the organic law the Legislature has over the several counties (Constitution 1875, sec. 25, art. 9.), it has the right to pass a general law governing the manner and time of the election of assessors in this State, which general law when enacted will apply to the city of St. Louis, and supersede that city's present charter provision upon this subject.

So far the case, the history of the legislation, and the argument follow in every substantial behalf the late

case of the State ex rel. v. Koeln, 270 Mo. 174, and up to this point what is said in that case applies in every material principle and aspect to the instant one. But in the Koeln case the conclusion that the Legislature had acted was deducible from the fact that it had theretofore enacted a law providing for the election of collectors "in all the counties of this State" (Laws 1905, sec. 1, p. 272), without having in terms excepted the city of St. Louis from the provisions thereof. Here in the instant case the Legislature in 1899, as stated above, repealed the statute governing the election of assessors in all of the 114 counties of the State, and enacted a new statute in lieu thereof, which statute does not apply in terms to the city of St. Louis, but on the contrary that city is specifically excepted from its provisions. So relator contends that the retention for more than forty-five years continuously of the clause which excepted the city of St. Louis from the provisions of the general law, conclusively shows that the Legislature has not superseded the charter; but on the contrary the Legislature by this fact has shown a fixed determination not to legislate for the city of St. Louis in the premises, and it follows that the charter provisions are still in force and govern this matter wholly.

From the facts (1) that when the present State Constitution was adopted, the matter of electing an assessor for St. Louis County was governed by a special law, (2) that the Constitution expressly provided that the charter of the city of St. Louis, when made and adopted should supersede and be in lieu of "all special laws relating to St. Louis County inconsistent with such scheme" (Constitution 1875, sec. 20, art. 9), but (3) reserved the right in the Legislature of similar control over said city to that which the Legislature had over other counties in the State, WILLIAMS, J., reached the conclusion (in which a majority of this court concurred) that all special laws which were not inconsistent with the charter of the city of St. Louis, and which were in force when our Constitution was adopted, continue in force in that city until the Legislature has exercised its power of control therein by passing a statute to control the matter under inquiry. [State ex rel. v. Koeln, 270 Mo. 174.] If this is the law,

and it seems both logical and convenient, and we have approved it, then it seems to the writer that the entire difficulty vanishes. Upon this view we are not required to rule whether the proviso in the Act of 1899, now Section 11341, Revised Statute 1909, be constitutional or not. The case becomes one of the simplest sort of statutory construction. The exception of the city of St. Louis from the operation of the general law governing the election of the assessors has been, as we have seen, on the statute books since a time long prior to the adoption of our Constitution. Not only has the Legislature not acted in the premises, and not legislated upon this subject, but it has shown a fixed and steadfast purpose not to act, and not to legislate. By retaining this exception continuously for more than forty-five years the Legislature has said in effect that upon the matter of electing assessors it purposes to pass laws to govern the remainder of the State, but that it does not purpose to change the law governing this matter in the city of St. Louis from the condition wherein the Constitution left it. This fixed purpose could not have been shown in any other way except by the proviso, or by some other similar exception contained in the statute. This is so, because of the provisions of section 8057, Revised Statutes 1909, which would, absent an exception, automatically have the effect to make the statute applicable to the city of St. Louis, as one of the "counties" of the State. [State ex rel. v. Koeln, supra.] Therefore the Legislature has uniformly incorporated an exception in the general statute, which makes plainly apparent its purpose not to legislate on the subject, so far as the city of St. Louis is concerned, which exception in the language of Section 8057, supra, renders any construction of an opposite purpose "inconsistent with the evident intent of such law."

Section 11341, supra, expresses therefore the legislative purpose of changing the law as to all that part of the State outside of the city of St. Louis, and likewise expresses a fixed intent not to change the law in such city. It is as clear as it is possible for any legal proposition to be that, if the proviso be taken away from the above section, because it is violative of the Constitution, then the whole

section fails. Any other construction would violate settled rules of statutory construction in at least two vital particulars. For, as pointed out by Judge Bond, the excision of the proviso *widens the scope and enlarges the territory within which the law shall operate,* which is forbidden (State ex rel. v. Railroad, 246 Mo. 512), and it is also right in the face of that rule of statutory construction which forbids the excision of a part of a statute as unconstitutional *when such excision serves to change the legislative intent.* [State ex inf. v. Duncan, 265 Mo. 26; Nalley v. Home Ins. Co., 250 Mo. 452; State ex rel. v. Wright, 251 Mo. 325; Greene County v. Lydy, 263 Mo. 77.] In my humble view, to hold that the proviso is invalid and the remainder of the section valid would be violative both of settled rules of statutory construction, and of common sense. For in the one case it would be tantamount to holding that in construing a statute we are no longer to be controlled by any consideration of the scope and territory intended to be embraced therein, or by the manifest intent of the law-making body; and in the other to holding that the city of St. Louis is included within the intendment of the general provisions of the statute in the very face of the unequivocal statement to the contrary contained in the proviso itself. If the excision of the proviso for that it is bad, serves to render the whole section invalid—and I am not able to see how there can be two differing views on this point—then it follows that there has been neither a valid election held to fill the office of assessor, nor a single *de jure* incumbent in that office in this State since the Act of 1895 went into effect.

The relegation to the charter of matters relating to the assessor of the city of St. Louis had all of the force and effect of a solemn statute. This is so, because the Constitution provided that all special laws applying to St. Louis County should *ipso facto* stand repealed upon the adoption of a charter, should the provisions thereof be inconsistent with such special laws. [Constitution 1875, sec. 20, art. 9, supra.] This had the effect to make the charter provisions the superior and controlling rule in all matters theretofore governed by a special law, as were then matters relating to the office of assessor in St.

Louis County. [Laws 1854-5, p. 178; Secs. 2-8, p. 1326, R. S. 1855.] This special law, or to be exact, the charter provision which superseded it, is yet the law in the city of St. Louis, unless it has been repealed expressly, or by clear implication by some other statute. Counsel have not pointed out to us, nor have I been able to find any such repealing statute.

The numerous (and largely pestiferous) broods of special or local laws which were passed before the present Constitution was adopted, were not necessarily abrogated by that instrument. As a matter of fact but few of them were so nullified, and these few by virtue of the provisions of Section 1 of the Schedule to the Constitution, for that they were inconsistent with the provisions of that instrument. [State to use of Ramming v. Lumber Co., 170 Mo. 7.] By far the great majority of such laws continued in force by express permission of Section 1 of the Schedule, supra, till they were repealed expressly or by the clearest implication, and many of these special laws are still in full force and vigor. Barring the effect upon such laws of Section 11 of the Schedule, the Constitution operated upon them prospectively only. It forbids the passage in divers matters and cases of any more special laws (Sec. 53, art. 4, Constitution), but it exercised no more potency in the repeal of an existing special law than it did in the repeal of a general law. Both continued in full force and effect, till they were repealed, unless they were in conflict with the Constitution.

Nor, as it has long been held, will the passage of a general law *ipso facto* and necessarily repeal a local or special law. In order to have the effect of repealing such special law the two acts must be in irreconcilable conflict, or the legislative intent to prescribe one single authoritative rule which shall govern must clearly appear. [City of St. Louis v. Alexander, 23 Mo. 483; Peters v. Renick, 37 Mo. 598; State ex rel. Vastine v. Judge of Probate Court, 38 Mo. 529; State ex rel. v. Macon County, 41 Mo. 453; St. Louis v. Insurance Co., 47 Mo. 147; State ex rel. v. Severance, 55 Mo. 378; Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Frazier, 98 Mo. 426; St. Joseph & Iowa Ry. v. Cudmore, 103 Mo. l. c. 638; St. Jo-

seph & Iowa Ry. v. Shambaugh, 106 Mo. l. c. 570; State v.
Bennett, 102 Mo. 356; State ex rel. v. Slover, 134 Mo. 10;
State ex rel. v. School Board, 131 Mo. 505; Folk v. St.
Louis, 250 Mo. 116.]

How can it be said that the repeal of a general stat-
ute carrying in the body thereof a special reference stat-
ute, which in terms excepts the city of St. Louis from the
provisions of the general law and refers to the special
law which shall govern St. Louis, had the effect to repeal
the exception, when in lieu of such general law a new act
is passed, which itself contains the identical exception? I
am thoroughly convinced that no affirmative action meet
for the repeal of the provisions of the charter of the city
of St. Louis has yet been taken by the Legislature, and
therefore that the manner and time of electing an asses-
sor for the city of St. Louis are still referable to the pro-
visions of that charter. For these reasons I concur with
BOND, J., in holding that the writ of ouster should be
awarded herein.

WALKER, J. (concurring)—I concur in the opinions
of my associates, Judges BOND and FARIS, in holding that
Section 11341, Revised Statutes 1909, is a valid statute
and that the violation of same in the appointment of an
assessor in the city of St. Louis by the Governor was
unauthorized. The arguments employed by my associates
in reaching this conclusion require no gloss. My purpose,
therefore, in this concurrence is not to elaborate these
arguments but, from an analysis of the statutes con-
cerning the assessment of taxes in the city of St. Louis,
to demonstrate the practical result that would follow an
elimination by judicial construction of the proviso ex-
cepting the office of assessor in said city from the pro-
visions of said section 11341. Respondent contends that
such an elimination would leave a general law applicable
alike to all portions of the State. The futility of this con-
tention, under a right application of the rules of consti-
tutional and statutory construction, has been clearly
shown by my associates. Let us, however, for the nonce
waive the question as to the validity of the section after
the excision therefrom of the proviso. There would re-

main, so far as pertains to the question here under consideration, a general law requiring the election of an assessor in the city of St. Louis. Something more is necessary, however, than the mere creation of an officer or an office to render the act of creation otherwise than barren of results. In addition, power must be declared and duties defined to render such an act more than an empty declaration or a sound signifying nothing in the practical conduct of affairs. In this case it must appear that the general statutes now in force, of an administrative nature, relating to the duties of assessors in other parts of the State may be effectively applied in harmony with the purposes of their enactment in the discharge of the duties of an assessor elected in the city of St. Louis.

It will not be contended even by those unfamiliar with the body of the law regulating the assessment of property, because no rule of construction lends countenance to' such a contention, that the elimination of the proviso from Section 11341 by declaring same invalid, will perforce eliminate identical provisions in other sections of the statute which prescribe the duties of assessors. Only by implication can such statutes be in any wise affected by a ruling in regard to Section 11341. Implications in regard to the validity of statutes are not favored. They are rarely made, and the intent and purpose of the Legislature in the enactment of these statutes lend no color to the conclusion that they should be declared invalid on account of the contended partial invalidity of Section 11341. In addition, the general rule is applicable here as elsewhere that until statutes are judicially declared invalid every presumption will obtain in favor of their validity. While conceding, therefore, simply for the sake of this argument and not that such a result could follow, that a general law will remain after the elimination of the proviso from Section 11341, as contended for by respondent, the other sections supplementary thereto and administrative in their nature must, according to their express terms, be given a reasonable interpretation, adding nothing thereto nor taking anything therefrom that will extend or limit their meaning.

Thus interpreted an analysis of these sections will enable it to be determined whether they can be applied in prescribing the duties of an assessor in the city of St. Louis.

At the threshold of this investigation we are confronted in each of these sections with the same exception which respondent contends should be eliminated from section 11341. Despite the presence of these exceptions, that the utmost latitude of construction, even to the invoking of an implication, may be employed to render these sections if possible in harmony with and in aid of Section 11341, let the implication be made although no rule of construction authorizes same, that the ruling contended for by respondent in regard to Section 11341 may be extended to these sections. This having been done, let it be determined from the sections themselves whether they can be made operative in defining the duties of an assessor in the city of St. Louis. Under Section 11346 each assessor is required to enter into a bond to the State to the satisfaction of the court or clerk in vacation, the amount of same within the limitation therein prescribed, to be fixed by the court or clerk for the faithful performance of the duties of his office. While not so stated, it is evident on account of the duties required to be performed by a county court that it was this tribunal referred to when the word "court" is employed in this section. Persuasive force is added to this conclusion in the provision at the close of said section that the "bond shall be deposited in the office of the clerk of the county court." There being no county court or county clerk in the city of St. Louis, this section cannot be construed as requiring a bond from an assessor in said city; and if it be held that he must be elected under the general law, there will remain no statute requiring him to enter into such an obligation as is required of assessors elsewhere.

Section 11361 requires the clerk of the county court to deliver to the assessor within the time therein stated, and every two years thereafter, an assessor's book of the last assessment of real estate and a list of taxable lands to be furnished, as elsewhere required by the register of lands, which the assesssor, after the completion of his as-

sessment, shall return to the clerk. Section 11362 prescribes a penalty to be enforced by the county court for the assessor's failure to comply with the preceding section. Section 11363 requires county courts to procure from the register of lands a plat showing, according to their legal subdivisions, the taxable lands in their respective counties. The purpose of this section is that the lists thus procured may by the county court be furnished to the assessors to prepare their land assessment books as required by Section 11361. The operative force of these sections is dependent upon the existence of a county court. The non-existence of such a tribunal in the city of St. Louis, therefore, renders these sections inapplicable in prescribing the duties of the assessor in said city if elected under the general law.

Section 11364 requires the county board of equalization in each county in each year to examine and compare the list of lands assessed, with plats to be procured from the U. S. Land Office. Under Section 11402 the members of the county court, county clerk, the county surveyor and the county assessor constitute the board of equalization, hence Section 11364 and other sections relative to the furnishing and filing of plats and lists of lands for assessment cannot be rendered applicable to the performance of this function in the city of St. Louis, as the officers constituting the county board of equalization do not exist in said city. Section 11372 prescribing the arrangement of assessor's land lists cannot, on account of the real property in said city not being subdivided according to Government subdivisons, be applied to the arrangement of assessor's books therein. Section 11373 requires that the President of the Board of Assessors in the city of St. Louis and county assessors elsewhere as directed by their respective county courts, shall prepare plat books showing changes in the assessments of real property for not longer than three years. If an assessor is elected under the general law for the city of St. Louis, neither by direct appointment nor by *ex officio* creation can there be a President of the Board of Assessors in said city—this, because such president owes

his existence, *ex officio* in its nature, to a precedent appointment under the city charter of an assessor by the mayor. The President of the Board of Assessors being non-existent and no express duty so far as this section (11373) is concerned, devolving on the assessor elected under the general law, and the duty required of assessors elsewhere being dependent upon an order of the county court and there being, as we have shown, no county court in the city of St. Louis, this section will necessarily be wholly inoperative therein.

The course to be pursued to replace or restore assessors' books in the event of their destruction by fire or otherwise as prescribed in Section 11382 cannot be applied in the event of such a calamity occurring in the city of St. Louis. The terms of this section are expressly limited to counties having county courts, county boards of equalization and county clerks, and the power necessary to restoration is confined in express terms to these officers. If a ruling be made in conformity with respondent's contention, the assessor in the city of St. Louis would as a consequence be compensated, if at all, under the general law. This statute under the terms of the section (11308) providing for such compensation cannot be made applicable to an assessor in the city of St. Louis. Furthermore, the result which would follow an attempt to regulate the assessment of property in said city, under the general law, would preclude equalizing the values of property therein on account of the absence from the general statute of a provision for a board of equalization in the city of St. Louis, the statute (Art. 3, Ch. 117, R. S. 1909) providing only for county boards of equalization.

An assessor elected under the general law must look to such law for a definition of his duties and the extent of his powers. If not found therein, they do not exist. The sections of the law in regard to the assessment of property which have been analyzed show the utter inapplicability of the general law to the city of St. Louis and that it was the purpose of the Legislature to limit such law to counties whose administrative affairs are conducted by county courts, and to leave the super-

vision and control of this very important governmental function in the city of St. Louis to its charter and ordinances. A ruling therefore which would authorize the election of an assessor for the city of St. Louis under the general law, would result in that official being deprived of any power to perform the functions necessary for the assessment of property therein. In other words, a general law is incapable of enforcement in the city of St. Louis because of the different conditions existing in said city and in other portions of the State. This being true, the exception to the constitutional provision (Sub. 32, sec. 53, art. 4) prohibiting special legislation may properly be invoked. The history of these statutes is strongly persuasive of the correctness of this conclusion. Section 11341 and the other sections cited have in their present words, except the change from the word county to that of city, been for more than sixty years upon our statute books. This cannot be reasonably construed as other than an evidence of legislative approval. If, therefore, the constitutional exceptions above cited were not sufficient to sustain the validity of this statute, the general rule which has frequently received our approval, should suffice to the effect that where the validity of a statute has for many years been recognized not only by the law-making power, but by the bench and bar and the people, the court should approach the question of its invalidity with great caution. Especially is this true where such a ruling as is contended for by respondent would necessitate the amendment of the entire body of the law in regard to the duties of the assessor and the assessment of property, and prior to such legislative action leave the city of St. Louis without power to assess property, thus depriving it of the most important step to the levy and collection of taxes, without which it could not exist. It may be asserted as a general rule that no statute, the objection of which is to promote a public purpose, for example the raising of revenue, should, if its validity can be sustained under any reasonable interpretation, be declared invalid. This is but a broader statement of the well defined rule that a law is always presumed to be valid and the greater its importance the stronger will be the presumption.

In view of all of the foregoing, I am of the opinion the writ of ouster should go.

BOND, J. (concurring)—I fully concur in the opinion of our Brother WALKER, that the hypothesis that a valid law would grow out of a judicial maiming of the act under review by cutting off its proviso, would lead to a countless host of absurdities when other acts pertinent to the duties of an assessor are considered.

I also feel that the conclusion in the opinion written by me has been strengthened by the demonstration of his. I do not, however, concede, even for argument, that a dismembered act of the Legislature can become a valid law—*as to subjects or objects excluded in the original*—after the session of the Legislature is ended.

WILLIAMS, J. (dissenting)—I dissent for the reason that while I am of the opinion that the *proviso* in the Assessors' Act (Sec. 11341, R. S. 1909) is unconstitutional, yet I am of the further opinion that the remaining portion of the act supplies a valid statute complete within itself, and that the remaining portion is of such character as to justify the belief and presumption that the Legislature would have enacted it even though the *proviso* had been omitted or its invalidity been known. [State ex rel. v. Gordon, 236 Mo. 142, l. c. 170; State ex inf. v. Washburn, 167 Mo. 680; Cooley's Constitutional Limitations (7 Ed.), pp. 246-8; Hale v. McGettigan, 114 Cal. 112, l. c. 117-121.]

*Graves, C. J.,* and *Blair, J.,* concur herein.