## THE STATE ex inf. JOHN T. BARKER, Attorney-General, v. EDMOND KOELN.

In Banc, February 24, 1917.

1. **COLLECTOR OF ST. LOUIS:** Elected in April, 1913. No one could be or was legally elected to the office of Collector of the Revenue for the city of St. Louis at the April election held in 1913. Said office is a county office, and the statute (Sec. 11432, R. S. 1909; Laws 1905, p. 272) requires the Collector to be elected at the general election held in November, 1906, and every four years thereafter.

2. ———: **Charter Provisions: Special Laws.** It was not intended that the provision of the Constitution of 1875, which provided that the charter to be framed for the city of St. Louis "shall supersede all special laws relating to St. Louis County," should for all future time be the controlling law upon the subject-matter covered by said existing special laws; for the Constitution also says that such charter "shall always be in harmony with and subject to the Constitution and laws of this State," that the city shall "collect the State revenue and perform all other functions in relation to the State in the same manner as if it were a county," and that "the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties;" and although there was a "special law" applicable to the county of St. Louis providing for the election of a collector for said county when the Constitution of 1875 was adopted, and the charter as framed named the collector as a city officer and provided for his election, the General Assembly, under these constitutional provisions, had authority to enact a statute applicable to all counties, including the city of St. Louis, and to require the election of a collector of the revenue in each at the general election held in November, 1906, and every four years thereafter, as it did in 1905, Laws 1905, p. 272..

3. ———: **Elected for Unexpired Term: Entrance into Office.** The office of Collector of the Revenue begins in March, and the general statute provides that in case of a vacancy occurring in said office it shall be filled by appointment by the Governor and that such appointee shall hold office until March. The person elected at the preceding November election to fill an unexpired term does not take possession of the office immediately upon his election, nor until the next March, whether the Governor filled the vacancy by appointment prior or subsequent to such election.

4. ———: ———: ———: **Appointment After Election.** The fact that the Governor failed to appoint some one to fill the vacancy in the office of Collector of Revenue, which had existed for sometime, until after the election of respondent to fill the unexpired term, did not authorize respondent to assume the duties of the office. The statute does not declare when the appointive power sha' be exercised, and he may therefore exercise it at any time before the expiration of the time the statute says his appointee shall occupy the office. Besides, respondent's title to the office comes through and by virtue of the rights incident to his election, and not through any default or delayed action of the Governor.

*Quo warranto.*

Writ granted.

. *Frank W. McAllister,* Attorney-General, *John T. Gose* and *S. P. Howell,* Assistant Attorneys-General, for ·relator; *Benjamin H. Charles,* of counsel.

(1) The burden is on the respondent to establish his right to the office. State ex rel. v. McCann, 88 Mo. 386; State ex rel. v. Powles, 136 Mo. 376. (2) (a) The legal requirement that collectors should be elected in 1906, and every four years thereafter, is, substantially, a direction that no election for that office shall be held in any intervening year. State ex rel. v. Roach, 269 Mo. 500. The designation by the statute of the years in which collectors are to be elected was intended to prevent collectors being elected in presidential years. State ex rel. v. Roach, 269 Mo. 500. (b) The General Assembly had the power to prescribe the term of office of collector, and to fix the time of elections therefor. Constitution, art. 9, sec. 14; State ex inf. v. Herring, 208 Mo. 727. The term is those four years ending on the first Monday in March of the year in which the collector is required to make his last final settlement for the tax book to be collected by him. R. S. 1909, sec. 11448; State ex inf. v. Herring, 208 Mo. 728. The vacancy admitted by respondent extended to the end of the four years which began in March, 1915. State ex inf. v. Herring, 208 Mo. 726. The Governor had the constitutional right to fill that vacancy. Constitution, art. 5, sec. 11; State ex inf. v. Herring, 208 Mo. 726. (c) In the exercise of its legislative discretion the General Assembly has fixed a regular time for the holding of an election for the office of Collector of the Revenue. When so fixed, no valid election can be held at any other time. State ex inf. v. Smith, 152 Mo. 521; State ex inf. v. Dobbs, 182 Mo. 367; State ex rel. v. Jenkins, 43 Mo. 265; In re Wooldridge, 30 Mo. App. 618. (d) Sec. 11432, R. S. 1909, "makes no provision for the election of a collector for an unexpired term." State ex inf. v. Herring, 208 Mo. 729. The statutes make no provision for an election for collector except for a regular, full, four-year term. State ex inf. v. Herring, 208 Mo. 729. (3) The city of St. Louis is not only a city but also a county

charged with the same functions, in its relations with the state at large, and with the State government, as all other counties. Constitution, art. 9, secs. 20 to 25; State v. Rebenack, 135 Mo. 350; Staub v. St. Louis, 175 Mo. 414; Brown v. Marshall, 241 Mo. 738. The collector of a county is a State officer, performing functions within the limits of his county. Henderson v. Koenig, 168 Mo. 356. The office of collector in the city of St. Louis is a State office. It was so treated prior to the Constitution of 1875. Laws 1871–1872, sec. 105. It was so treated by the Constitution of 1875, Constitution, art. 9, sec. 23. It has been so treated by subsequent legislation. Laws 1905, p. 272, now Sec. 11432, R. S. 1909. By the Constitution itself the Legislature has the same power over the city of St. Louis as it has over other cities and counties. Constitution, art. 9, secs. 20 to 25; State v. Telephone Co., 187 Mo. 83; State ex rel. v. Stobie, 194 Mo. 53. The collection of revenue in St. Louis is a subject under control of the Legislature, just as in all other counties in the State. State ex rel. v. Alt., 224 Mo. 510. The collector in St. Louis, being a county officer prior to the adoption of the Constitution of 1875, and being so treated by the Constitution itself and by subsequent legislation, the adoption of the charter could not change the character of the office. It still remains a county or State office. Henderson v. Koenig, 168 Mo. 367. Sec. 11432, R. S. 1909 (being the Act of 1905), cannot be construed so as to exclude the city of St. Louis. To do so would be to construe that act as special or local. The general law is not only capable of being construed so as to apply to all collectors in the State, including the collector in St. Louis, but the statutes specifically so provide. R. S. 1909, secs. 8057, 11434, 11448, 11460, 11464, 11471, 11476, 11481–XIV, 11481–XV.

*Charles W. Bates* and *Edward W. Foristel* for respondent.

(1) Sec. 11432, R. S. 1909, annuls section 1, article 4, of the old charter of the city of St. Louis in so far as

it relates to the office of Collector of Revenue; also section 34 of article 5 of the old charter, which section undertakes to define his duties. Constitution 1875, art. 9, secs. 14, 20, 23, 25; St. Louis v. Dorr, 145 Mo. 482; State ex rel. v. Railroad, 117 Mo. 1; Ewing v. Hoblitzelle, 84 Mo. 64; State ex rel. v. Jost, 265 Mo. 72; Peterson v. Railroad, 265 Mo. 506; Kansas City v. Scarritt, 127 Mo. 642; State v. Bennett, 102 Mo. 356; State ex rel. v. Bell, 119 Mo. 70; State ex rel. v. Mason, 153 Mo. 23; Kansas City v. Hallette, 59 Mo. App. 160; Sec. 8057, R. S. 1909. (2) Unless the Act of 1905, providing for collectors of the revenue, now Sec. 11432, R. S. 1909, applies to the city of St. Louis, then it is a special law and a local act within the meaning of section 53, article 4, of the Constitution, and is void as being in contravention of the express terms of the Constitution. Henderson v. Koenig, 168 Mo. 356. (3) Respondent was legally elected Collector of the Revenue of the city of St. Louis at the general election held on November 7, 1916, and by virtue of such election assumed the duties of collector, the office at that time being vacant, there never having been an incumbent. State ex rel. v. Roach, 269 Mo. 500; State ex rel. v. Herring, 208 Mo. 729; Constitution, art. 5, sec. 11; Sec. 5828, R. S. 1909; State ex inf. v. Amick, 247 Mo. 292. (4) Respondent assumed the duties of the office to which he was elected November 7, 1916. The office of Collector of the Revenue having been established in the city of St. Louis by the Act of 1905, now Sec. 11432, R. S. 1909, and the office having been vacant from the time of its establishment by the Act of 1905, the Governor of Missouri having failed to act in filling the vacancy the people at the general election in 1916 undertook to elect, and did elect, respondent to fill the office of Collector of Revenue of the city of St. Louis. Thereafter, respondent received his certificate of election to such office from the election commissioners of the city of St. Louis, qualified by filing his bond, taking the oath of office and entering upon the discharge of his duties, and was filling the office when the Governor appointed May, so that there was no vacancy when the Governor,

after having failed for four years to fill the office by appointment, undertook to appoint May.  Sec. 5828, R. S. 1909.

*Charles H. Daues* and *William H. Killoren, amici curiae.*

(1) Under the Constitution the city of St. Louis is authorized to frame a charter for the government of the city.  Article 9, sec. 20, Constitution.  (2) Under the Constitution and laws the city of St. Louis is authorized by charter and ordinance to provide for the collection of State revenue. Sec. 11546, R. S. 1909; Art. 9, sec. 23, Constitution; State ex rel. v. Finn, 8 Mo. App. 348; State ex rel. v. Walsh, 69 Mo. 408; State ex rel. v. Mason, 4 Mo. App. 379.  (3) The repeal of a special act could not of itself put in force within the county of St. Louis the provisions of the general law applicable to the remainder of the State, notwithstanding the fact that the provisions of the general law are the same as those contained in the special law.  State ex rel. v. Watson, 71 Mo. 470.  (4) The city of St. Louis can only act through the instrumentality of its officers.  State ex rel. v. Walsh, 69 Mo. 408; State ex rel. v. Mason, 4 Mo. App. 377; State ex rel. v. Finn, 8 Mo. App. 341.  (5) All elective officers of the State are chosen at the general election held biennially on the Tuesday next following the first Monday in November.  Article 8, sec. 1, Constitution.  (6) The charter of 1876 as well as the charter of 1914, adopted by the people of the city of St. Louis, provides that all elective officers required by the charter or ordinance shall be chosen on the first Tuesday in April, and every four years thereafter.  Pursuant thereto the Collector of the Revenue for the city of St. Louis, for the past forty years has been elected in April.  Art. 2, sec. 1, Charter of 1876; Art. 2, sec. 1, Charter of 1914.

WILLIAMS, J.—This is a proceeding in *quo warranto* instituted in this court by the Attorney-General to oust respondent from the office of Collector of the Revenue of the city of St. Louis.

The facts of the case, concerning which there is now no dispute, are correctly stated in his brief, by the learned Attorney-General, as follows:

"The first count of the petition is in the customary form in *quo warranto*.

"The second count informs the court and alleges that the respondent received the highest number of votes for the office of collector at a certain election held in St. Louis in April, 1914 (1913), but that the respondent was not elected and could not be legally elected at that time, and that by section 11432 of the Revised Statutes of 1909, it is provided that collectors should be elected at the general election in 1906 and every four years thereafter, but that respondent was not elected in 1906, nor at any general election occurring thereafter.

"That certain proceedings were taken by the Republican City Central Committee in October, 1916, in attempting to nominate the respondent for the office of collector, to fill a vacancy then existing in said office for the term ending in March, 1919; and the respondent appeared before the Board of Election Commissioners of said city and urged that there was a vacancy then existing in the office, employed counsel to represent him before the said board, and filed a brief in support of his contention.

"That thereafter the Board of Election Commissioners caused ballots to be printed for the general election to be held on the 7th day of November, 1916, whereon they printed the name of the respondent as a candidate for the office of collector for the said unexpired term; and at that election he received the largest number of votes cast.

"That on December 14, 1916, the Governor of the State, Hon. Elliott W. Major, appointed and commissioned Sidney S. May to the office of Collector to fill the said vacancy alleged and claimed by the respondent. Mr. May executed the bond required by the statute, in duplicate, in the sum of seven hundred and fifty thousand dollars, with the United States Fidelity and Guaranty

Company as surety thereon, this company being authorized to do business in Missouri and to become surety on such bonds. Mr. May filed one of the duplicate bonds with the State Auditor, and procured his certificate of approval thereof. He then presented the other duplicate of said bond to Hon. Henry Kiel, Mayor of St. Louis, requesting his approval thereof. (Mayor Kiel refused to approve the bond upon the sole ground, as found by the special commissioner, that he had already approved the bond of defendant Koeln.) Mr. May then offered to file his bond with the City Register, the official custodian of such documents in St. Louis, and on the same day, December 16, 1916, he exhibited his commission and the certificate of approval of his bond by the State Auditor to the respondent and demanded of him the possession of the office, together with the papers and documents belonging to it. Respondent refused to surrender the office.

"The respondent's return alleges his own qualifications to hold the office, and these are not denied by the relator. He also alleges the fact of a city election in April, 1913, substantially as does the relator, and the fact that he received the highest number of votes and his subsequent qualification and assumption of the duties of the office by him. Respondent then alleges that for a long time prior to October, 1916, a vacancy existed in the office of Collector of Revenue in St. Louis and that he was nominated by the Republican City Central Committee, no person having filed any declaration for nomination under the primary law; that the Democratic City Committee nominated H. C. Menne, and that at the election respondent received the highest number of votes. He then alleges that the election commissioners of said city issued to him a certificate of election for said unexpired term; that on December 8, 1916, he qualified by giving bond, which was duly approved by the Mayor and the State Auditor, and took possession of the office.

"In answer to the second count the respondent repeats his allegations respecting the city election in

April, 1913, and denies that he was not legally elected at said election. He then admits the provisions of section 11432, Revised Statutes 1909, admits that he was not elected Collector at the general election in 1906, and alleges that he was elected at the general election November 7, 1916, to fill the unexpired term ending March, 1919.

"He admits that he contended, before the Board of Election Commissioners in St. Louis, that a vacancy existed in 1916, and that he ran for the office for the unexpired term on a nomination by the Republican City Central Committee.

"Respondent also admits that the Governor appointed Mr. May on December 14, 1916, but denies that the appointment was valid, and also alleges that Mr. May was ineligible to hold the office because of the fact that he had been appointed a member of the Board of Election Commissioners for a term expiring January 15, 1917."

If respondent has legal title to the office in question it is by reason of having been duly elected thereto. He presents no other basis for his claim. If he was legally elected thereto then it must have been either at the April, 1913, city election or the November, 1916, general election, because reference is made to no other election.

The legal questions calling therefore for an answer upon the issues of the present record may be summarized broadly as follows:

1. Was respondent legally elected to this office at the April, 1913, city election for a term of four years?

2. If the above question is answered in the affirmative, it will determine the case. If that question is answered in the negative then the next question arising is: Was respondent *legally* elected at the general election held November 7, 1916?

3. If the second question is answered in the negative the case is again at an end; but if the second question is answered in the affirmative then the next question arising is: When, after the November, 1916, election

should respondent be permitted to enter upon the discharge of the duties of the office?

These in their order.

I. Was respondent legally elected to
**Election of Collector at Spring Election: Acts of 1905.** this office at the April, 1913, city election? We think not. Both the relator and respondent in their respective briefs agree with us upon this proposition.

Learned attorneys, in behalf of the city of St. Louis, appearing, by leave of this court, as *amici curiae*, alone question the soundness of this position. And since the question is one which must be determined by the law and not by consent or desire of parties, it is but proper that we consider the advice of our friends before passing to the other questions involved.

The view expressed by *amici curiae* is that at the time of the 1913 city election (and even yet), the office of Collector of the Revenue in the city of St. Louis, was and is a city office as contradistinguished from a county or State office and that the law governing the elections held for the purpose of filling such office was contained in the charter of said city rather than in the general statutes of the State.

If the above legal contention is correct respondent would now be entitled to hold the office, because the admitted facts show that in pursuance of said charter provisions he was at the April, 1913, election elected to hold this office for a term of four years, which term would carry him safely by the present date of controversy.

In opposition to this view, however, both the relator and respondent in their briefs contend that the Collector of Revenue for the city of St. Louis is a State (county) officer and his election is to be governed by the statutes of the State and that since the statutes of the State made no provision for an election to be held in April, 1913, a legal election was not then held which would entitle the respondent to now hold the office.

Article 4, section 1, St. Louis Charter of 1876, then in force, was as follows:

"The following named city officers shall be elected by the qualified voters of the city, and shall hold their office for a term of four years, and until their successors shall be duly elected and qualified, viz: a mayor, comptroller, auditor, treasurer, register, *collector,* recorder of deeds, inspector of weights and measures, sheriff, coroner, marshal, public administrator, president of board of assessors, and the president of the board of public improvements."

Article 2, section 1, of the same charter provides:

"A general election of all elective officers required by this Charter, or by any ordinance of this city, shall be held on the first Tuesday in April, 1877, and every four years thereafter, except as otherwise provided in this charter and the scheme."

Section 11432, Revised Statutes 1909 (Laws 1905, p. 272), provides:

"The offices of sheriff and *collector* shall be distinct and separate offices in all the counties of this State, and at the general election in 1906, and every four years thereafter, a collector, to be styled the collector of the revenue, shall be elected in all the counties of this State, who shall hold their office for four years and until their successors are duly elected and qualified: Provided, that nothing herein contained shall be so construed as to prevent the same person from holding both offices of sheriff and collector."

Section 8057, Revised Statutes 1909 (Act of 1879), provides:

"Whenever the word 'county' is used in any law, general in its character to the whole State, the same shall be construed to include the city of St. Louis, unless such construction be inconsistent with the evident intent of such law, or of some law specially applicable to such city."

It will appear from the foregoing quoted sections of the charter and statutes that there is an apparent

conflict of law with reference to the election of a collector of the city of St. Louis.

The following provisions of the Constitution of Missouri, 1875, may be briefly mentioned as applicable, viz: Article 9, section 20, gives to the city of St. Louis the right, in the manner therein designated, to adopt "a scheme" and "a charter in harmony with and subject to the Constitution and laws of Missouri," and provides that the charter and scheme when adopted shall "take the place of and supersede the charter of St. Louis and all amendments thereof and all special laws relating to St. Louis County."

Section 23 of the same article provides that "such charter and amendments shall always be in harmony with and subject to the Constitution and laws of Missouri. . . . The city as enlarged shall . . . collect the State revenue and perform all other functions in relation to the State in the same manner as if it were a county as in this Constitution defined."

Section 25, same article, provides:

"*Notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St Louis that it has over other cities and counties of this State.*" (Italics ours.)

The process of logic by which is determined whether the Collector of the city of St. Louis is a city officer or a State officer is apt to become confused by reason of the singular and peculiar relationship which the city of St. Louis bears to the State. Loosely speaking any officer elected by the suffrage of the city of St. Louis might be termed a city officer, at least in the sense that he is elected by the. vote of the city. The character of the electorate, however, should not necessarily determine the character of the office. The territory confined within the boundaries of the city of St. Louis forms a political subdivision of the State. This territory has no county organization in the ordinary use of that term, but by the Constitution the said city is to "collect the State revenue and perform all other functions in relation to the State in the same manner as if it were a

county as in this Constitution defined." If this political subdivision of the State were styled a county no confusion would arise in arriving at the conclusion that the person whose duty it was to collect the State taxes was an officer of the State and that his election would be a subject of legislative control.

Why then should the election of the Collector of the Revenue of the City of St. Louis (a separate political subdivision of the State which, under the Constitution, bears the same relationship to the State as a county), who, at least so far as collecting the revenue ordinarily collected by a county collector is concerned, performs the same governmental function, be controlled by a law different from that which controls the election of collectors in the other political subdivisions (counties) of the State? No reason is apparent why the election of one should be controlled by a law different from that applying to other officers exercising a like governmental function, and none can be said to exist unless perchance the power of control over the election of this officer in the city of St. Louis was, by the Constitution, permanently transferred to the charter making power of said city.

It is unnecessary here to enter into a detailed historical discussion of the well known events surrounding and leading up to separation of the city of St. Louis from the county of St. Louis whereby the city of St. Louis became a separate political subdivision of the State; but a statement of a few of the conditions then existing and a review of the constitutional provisions with reference thereto will be sufficient.

Prior to the separation of the city from the county of St. Louis, which occurred in the year 1876 a special law applicable to the county of St. Louis was in existence providing for the election of a collector for said county. [Laws 1871-2, sec. 104, p. 105.]

Under the Constitution existing in 1872 such special laws were permissible. It has been shown above that the Constitution of 1875, which provided for the separation of the city from the county and authorized the mak-

ing of a scheme and charter, provided also that said scheme and charter when adopted should take the place of and supersede all special laws relating to St. Louis County. This was undoubtedly a very wise provision, making for harmony rather than chaos and confusion upon the occurrence of the act of separation then in contemplation, but of course not definitely foreknown.

The charter (Charter, art. 4, sec. 1, and art. 2, sec. 1, supra) did provide for electing a collector to collect the revenue from the territory embraced within the city after separation.

But was it intended by this constitutional provision that the charter provision thus superseding the said special laws should for all future time be the controlling law upon the subject-matter covered by said special laws? In other words, was it the intention of the Constitution to forever withdraw from general legislative control the right to prescribe the manner of electing a collector of the revenue for the political subdivision of the city of St. Louis? Or was it the intention merely to provide a convenient rule of conduct in such matters until such time as the General Assembly of the State should, in a legal way, otherwise provide? That the latter was intended, is, we think, clearly evident by the language of section 25, supra, appearing in the same article of the Constitution, viz: ''Notwithstanding the provisions of this article, the General Assembly shall have the *same power over the city and county of St. Louis that it has over other cities and counties of this State.*'' [Ewing v. Hoblitzelle, 85 Mo. 64, 1. c. 76 et seq.] The following authorities also support the general principles here underlying: State ex rel. v. Railroad, 117 Mo. 1. c. 11-12; St. Louis v. Klausmeier, 213 Mo. 119, 1. c. 129-130; Peterson v. Railroad, 265 Mo. 462, 1. c. 504.

That the General Assembly has the power to legislate with reference to the subject of electing collectors of revenue in the different counties of the State there can be no doubt. Having that power over the respective counties, it necessarily follows from the above con-

stitutional mandate that it also has this same power over the political subdivision of the State known as the city of St. Louis.

Having reached the conclusion that the General Assembly has the power to so legislate, we have next to ascertain whether it has exercised that power.

Section 11432, supra (Act of 1905), provided that "at the general election in 1906, and every four years thereafter, a collector, to be styled the Collector of the Revenue shall be elected in all the counties of this State, who shall hold their office for four years." Section 8057, supra (Act of 1879), provides that "Whenever the word 'county' is used in any law general in its character to the whole State, the same *shall* be construed to include the city of St. Louis, unless such construction be inconsistent with the evident intent of such law, or of some law specially applicable to such city."

Whether the General Assembly had exercised this power to legislate upon this subject prior to 1905, we need not here stop to consider. We have no hesitancy, however, in saying that by the Act of 1905, supra, it *did* exercise such power. And it not being apparent that a valid reason exists for electing a collector in the political subdivision of the city of St. Louis at a time different from that in the other political subdivisions of the State, we hold that the law should apply to each political subdivision thereof. To hold otherwise would be to give the act a construction which would render the same unconstitutional as in violation of article 4, section 53 (32) of the Constitution (the inhibition against special laws where a general law can be made applicable). And such a construction, under the circumstances here presented, would violate one of the well known canons of statutory construction. [State ex rel. v. Mason, 153 Mo. 23, l. c. 49; 6 R. C. L. 78, sec. 77; 2 Lewis's Sutherland, Statutory Construction (2 Ed.), par. 498.]

We, therefore, hold that the Act of 1905, sec. 11432, supra, applies to the city of St. Louis, and that, at least since the Act of 1905, supra, the general statutory law of the State, and not the charter of the city, controls the

matter of electing or filling the office of Collector of the Revenue for the city of St. Louis.

The points above ruled do not conflict with the rulings upon the points held in judgment in the cases of State ex rel. v. Finn, 8 Mo. App. l. c. 348; State ex rel. Burden v. Walsh, 69 Mo. 408; State ex rel. v. Mason, 4 Mo. App. l. c. 379-80; State ex rel. v. Watson, 71 Mo. 470, cited and relied upon by *amici curiae*.

II. Was respondent legally elected at the November, 1916, general election? We have reached the conclusion that this question must be answered in the affirmative.

It stands conceded upon the facts disclosed by this record that *if* there was authority of law for electing a Collector for an unexpired term then respondent was duly elected. No point is made of any existing irregularities which would invalidate respondent's election if an election were authorized.

Unexpired Term.

But the contention of relator is that since section 11432, supra (Act of 1905), definitely fixing the term of office at four years and the time of election in 1906 and every four years thereafter, did not make specific provision for elections to fill unexpired terms, upon vacancies occurring, it thereby evidenced a legislative intent that no elections should be held in off years to fill an unexpired term of that office, and that therefore the prior enactment on elections for unexpired terms to fill vacancies (Sec. 5828, R. S. 1909) should not apply.

Relator relies upon State ex rel. Evrard v. Roach, 269 Mo. 500, and State ex inf. v. Herring, 208 Mo. 708.

The Evrard case deals with the question of election with reference to the office of State Superintendent of Public Schools and holds that the constitutional provision, viz., "the Superintendent of Public Schools shall be elected, at the general election in the year one-thousand-eight-hundred and seventy-eight and every four years thereafter," was controlling with reference to the subject of elections held to fill that office and that the Legislature

was without authority to provide for an election for that office at any different time. That case cannot be said to be an authority upon the point here presented. Here we have no constitutional provision directing the time for holding elections of collectors. The point here for determination is not whether the Legislature *has the power* to provide for election of collectors for an unexpired term (a point which will be conceded by all), but whether the Legislature has exercised its conceded power in so providing.

A careful reading of the Herring case, supra, will also disclose that it is not in point. In that case the court was dealing with the question with reference to the time the relator, elected at the general election in the year 1906 for a full term as county collector, should be entitled to the office, or stated the other way, how long should the respondent, an appointee of the Governor, appointed to a vacancy occurring during the last year of a full term, be permitted to hold the office. It should not be said that that case undertook to settle the law on a question not before it, to-wit: Can there be an election of a collector in an off year to fill the unexpired term, a vacancy in such office having occurred prior thereto, as in this case?

Section 5828, Revised Statutes 1909, is as follows:

"Whenever any vacancy, caused in any manner or by any means whatsoever, shall occur or exist in any State or county office originally filled by election by the people, other than the office of Lieutenant-Governor, State Senator, Representative, Sheriff or Coroner, such vacancy shall be filled by appointment by the Governor; and the person so appointed shall, after. having duly qualified and entered upon the discharge of his duties under such appointment, continue in such office until the first Monday in January next following the first ensuing general election—at which said general election a person shall be elected to fill the unexpired portion of such term, or for the ensuing regular term, as the case may be, and shall enter upon the discharge of the duties of such office the first Monday in January next follow-

ing said election: Provided, however, that when the term to be filled begins or shall begin on any day other than the first Monday in January, the appointee of the Governor shall be entitled to hold such office until such other date.''

That the language of the above section is sufficiently comprehensive to include the office of county collector all will concede. This section was a part of the existing law when the Act of 1905, section 11432, supra, was passed. It was therefore unnecessary that the Legislature in the Act of 1905 should have specifically provided for elections to fill unexpired terms. Their failure so to do is evidence of the fact that they knew of the then existing statute which would apply and cover the matter of elections for unexpired terms rather than evidence of an intention to have no statute on the subject. It is a well established rule of statutory construction that statutes *in pari materia,* even though enacted at different dates, are to be construed together and if possible given such construction as will harmonize and give effect to all the provisions. [State ex inf. v. Standard Oil Co., 218 Mo. 1, l. c. 355, and cases therein cited; 2 Lewis's Sutherland, Statutory Construction (2 Ed.), par. 443; Frost v. Wenie, 157 U. S. l. c. 58.]

Applying the above rule, we hold that section 11432, supra, providing the time of holding elections for a full term does not conflict with the provisions of section 5828, supra, providing for elections to fill unexpired terms, but that the two are in harmony with each other, supplying a complete statutory rule with reference to elections for this office.

III.  Having reached the conclusion that respondent was legally elected for an unexpired term at the November, 1916, general election, we are now to **Entrance Into Office.** determine when respondent takes his office by virtue of said election.

Relator contends that respondent should not enter upon the discharge of the duties of the office until the first Monday in March, 1917. Respondent contends that

he was entitled to take the office immediately after the election. No authorities are cited. ⁻

The term of the office of collector begins on the first Monday in March. [Sec. 11448, R. S. 1909; State ex inf. v. Herring, 208 Mo. 708, l. c. 728.]

Section 5828, supra, in effect provides that a person elected for an unexpired term shall enter upon the discharge of the duties of such office the first Monday in January next following such election unless the term to be filled (here the term of the office of collector) begins or shall begin on any day other than the first Monday in January, then upon such date (in this case the first Monday in March, 1917).

It will be noticed that said section which provides for an election for an unexpired term also provides for an appointment by the Governor to fill such vacancy until the time therein specified.

Under the admitted facts in this case the vacancy existed at least prior to June 1, 1916. How long prior thereto the purposes of this case do not call for an answer. The Governor, however, did not undertake to exercise his power of appointment until December 14, 1916.

Respondent in his brief admits that had the Governor made his appointment prior, instead of after, the general election of 1916, the respondent could not have taken office under such election until the first Monday in March, 1917, but contends that since the Governor failed to appoint prior to said election he had no right to appoint thereafter, and, for that reason, respondent (no one else having a better title), had the right to assume the duties of the office.

Since the above mentioned section, upon the occurrence of a vacancy as here existed, gave the Governor the power to appoint a person who, under the terms of the statute, would hold until the first Monday in March, 1917, and since the act does not declare when the appointive power must be exercised, we are of the opinion that the fair construction of the statute is that the Governor may exercise that power at any time before the

expiration of that period and the man so appointed would hold until the first Monday in March, 1917. *There is no proviso in the statute* which says in the event the Governor fails to appoint prior to the date of election that thereupon the elected person shall immediately assume the office, and we are without the authority to write such a *proviso* in the statute.

Under the statute, therefore, respondent's title comes through and by virtue of the rights incident to his election, and not through any default or delayed action upon the part of the appointing power.

From the conclusions reached above, it follows that the respondent is not entitled to enter upon the discharge of the duties of said office until the first Monday in March, 1917, and that the writ of ouster should be awarded. It is so ordered.

*Graves, C. J., Walker, Faris* and *Blair, JJ.,* concur; *Bond, J.,* concurs in result; *Woodson, J.,* dissents.