Paul W. PREISLER (Plaintiff), Appellant,

v.

Joseph T. HAYDEN, License Collector of the City of St. Louis, Michael L. Galli, Daniel J. Nack, Eugene C. Wienke, and G. Duncan Bauman, as Members of the Board of Election Commissioners of the City of St. Louis (Defendants), Respondents.

No. 46029.

Supreme Court of Missouri, Division No. 1.

Feb. 10, 1958.

Paul W. Preisler, pro se.

Frank P. Motherway, Eugene P. Walsh, St. Louis, for respondent, Joseph T. Hayden.

James M. Douglas, St. Louis, for Members of the Board of Election Commissioners of the City of St. Louis.

HYDE, Justice.

Declaratory judgment action to determine whether the office of License Collector of the City of St. Louis had ceased to exist because of the provisions of Sec. 22, Art. VI of our 1945 Constitution, V. A.M.S. The court found this to be a legal existing office and the laws pertaining to it to be constitutional; and plaintiff has appealed. We have jurisdiction because the construction of constitutional provisions is required.

Sec. 22 of Art. VI provides: "No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices heretofore created shall cease at the end of the terms of any present incumbents." The Debates of the Constitutional Convention, which it is proper to consult (as plaintiff contends) in determining the meaning of Constitutional provisions (Stemmler v. Einstein, Mo.Sup., 297 S.W.2d 467, 475) clearly show that the purpose of this Section was to nullify the effect of our decision in Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74. In that case, we held the provisions of the Act of 1901 (Laws 1901, p. 80) were applicable to Kansas City after it was determined by the 1920 census that it had more than 300,000 inhabitants. However, while the Debates show what was intended by said Sec. 22 as to Kansas City, and other cities adopting charters under the same constitutional authorization, they are not very helpful in deciding the question herein presented.

The Act of 1901, now Secs. 82.310 to 82.410 (statutory references are to RSMo and V.A.M.S.) was enacted with the following title: "An Act to create the office of license collector, provide for the election of license collector, regulate his salary, and the salaries and compensation of deputy license collectors, clerks and employees in said office, and define the duties thereof, in cities now having, or which hereafter may have three hundred thousand inhabitants, or more, and to provide for the payment of the salaries and expenses

of said office of license collector." At that time St. Louis was the only City in this State with 300,000 inhabitants. However, our Constitution of 1875 had authorized the organization of St. Louis as both a city and a county. (Secs. 20–25, Art. IX.) It was provided (Sec. 23) that the City should "collect the State revenue and perform all other functions in relation to the State in the same manner as if it were a county as in this Constitution defined." It was also provided (Sec. 25) that "the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties in this State." Sec. 23 also provided for the city to have representation in the General Assembly as a county; and all such representation under both constitutions (1875 and 1945) has always been on a county basis. (Secs. 2, 3, 5, 8 and 9, Art. IV, 1875 Const.; Secs. 2, 3 and 5, Art. III, 1945 Const.)

After this new organization, much legislation was adopted applying to St. Louis. Some of this directly stated it applied to the City of St. Louis. (Laws 1877, pp. 187–193.) Some of it was made applicable to cities with a certain stated number of inhabitants. (Laws 1879, pp. 42–44; Legislation for St. Louis also has been made applicable to "cities in this state not in any county" Sec. 82.570; See also Sec. 82.600.) In State ex rel. Hawes v. Mason, 153 Mo. 23, 52, 54 S.W. 524, 532, we said: "St. Louis is organized directly under the constitution. It is not in either of the four classes of cities which have been defined by the legislature under the constitution. It would have been entirely appropriate for the legislature to have designated St. Louis by name, instead of referring to it as a city of over three hundred thousand inhabitants." See also State ex rel. McCaffery v. Mason, 155 Mo. 486, 502, 55 S.W. 636; Kansas City v. Stegmiller, 151 Mo. 189, 204, 52 S.W. 723. In the Stegmiller case, we said (151 Mo. loc. cit. 204, 52 S.W. loc. cit. 726) that the City of St. Louis, which the Constitution

"expressly authorized to adopt its own scheme and charter, and all such cities as it authorized by section 16, art. 9, (now Sec. 19, Art. VI, 1945 Const.) to frame and adopt their own charters * * * constitute two constitutional classes distinct from those chartered and classified by the legislature." Applicability of legislation on a population basis has caused trouble in matters other than municipal officers. See Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195. Thus, although cities authorized to frame and adopt their own charters (under Sec. 16, Art. IX, 1875 Const. or Sec. 19, Art. VI, 1945 Const.) and the City of St. Louis are all constitutional charter cities (see Sec. 82.010) they are not cities of the same class. Sec. 31, Art. VI, 1945 Const. states: "The city of St. Louis, as now existing, is recognized as both a city and as a county." (See also Sec. 1.080, Sec. 46.040, Sec. 82.700 and Sec. 105.260.) As we stated in Stemmler v. Einstein, 297 S.W.2d 467, 469: "although it constitutes a legal subdivision of the State and exercises such governmental functions as are generally exercised by the one hundred fourteen counties of this State, the City of St. Louis is not legislatively classified as a county, but as a city."

There can be no doubt that Sec. 22 of Art. VI, 1945 Constitution, applied to all offices in cities of the constitutional class created under Sec. 19, Art. VI, 1945 Constitution, because the only offices they can have are municipal offices. However, it is not even contended that this section applies to county offices in the City of St. Louis. In Stemmler v. Einstein, Mo.Sup., 297 S.W.2d 467, we discussed the distinction between such county officers and municipal officers and held that the provisions of the 1945 Constitution did not invest the City of St. Louis with authority to frame and adopt a charter for the exercise of county governmental functions or to make provisions relating to the number, kinds, manner of selection, terms of office and salaries of county officers therein.

One of the offices, considered as a county office in the Einstein case (297 S.W.2d loc. cit. 469) was the office of License Collector; and we think that is correct for the reasons hereinafter stated.

We have heretofore considered in several cases the dual nature of the City of St. Louis and the principles to be applied in determining which of its officers are county officers. In State ex rel. Walker v. Bus, 135 Mo. 325, 337, 36 S.W. 636, 639, 33 L.R.A. 616, we said: "While the city of St. Louis is strictly a municipal corporation, its territory is also a subdivision of the state, in which officers are elected to perform the functions of the state government, as distinguished from those pertaining to municipal government. Those officers are in no sense municipal officers. Their designation as officers of the city of St. Louis refers to their territorial jurisdiction, rather than to the governmental duties they perform. They are officers under the laws of the state, and perform their duties within the city limits. The sheriff of the City of St. Louis is an officer of the city in the same sense that a sheriff of a county is an officer of the county. He is no more a municipal officer than a sheriff of a county is an officer of a municipal corporation, the territory of which is included in his jurisdiction." In State ex inf. Barker v. Koeln, 270 Mo. 174, 192 S.W. 748, we held the Collector of Revenue for the City of St. Louis was a county officer, required to be elected at the November state election, although named in the first city charter as a city officer and required by that charter to be elected at the April city election. In that case, we said (270 Mo. loc. cit. 185, 192 S.W. loc. cit. 751): "Loosely speaking any officer elected by the suffrage of the city of St. Louis might be termed a city officer, at least in the sense that he is elected by the vote of the city. The character of the electorate, however, should not necessarily determine the character of the office. The territory confined within the boundaries of the city of St. Louis forms a political subdivision of the state. This territory has no county organization in the ordinary use of that term, but by the Constitution the said city is to 'collect the state revenue and perform all other functions in relation to the state, in the same manner, as if it were a county as in this Constitution defined.'" Likewise, in State on inf. McKittrick v. Dwyer, 343 Mo. 973, 124 S.W.2d 1173, 1176, although the 1914 St. Louis charter provided for appointment of the City Treasurer by the Mayor, we held the Mayor had no such authority but that the Treasurer was to be elected at the state November election as a county officer; although we noted: "The treasurer of the city performs official duties relating to the city as a political subdivision and also performs official duties relating to the city in its corporate capacity."

As stated the office of License Collector was created by the 1901 Act, which provided for his election (with a four year term) at the State November election and for vacancies in the office to be filled by the Governor. (Now Sec. 82.330.) By that Act every duty of the City Collector "with respect to the assessment, levy, issue, transfer or revoking of license or license taxes for any purpose whatever" was "transferred to the office of license collector." (Now Sec. 82.410; see also Sec. 82.350.) It was further provided by Sec. 8 of the 1901 Act: "The words 'license' and 'license tax,' used in this act, shall include licenses for all purposes authorized or required by law or ordinance and also the tax on telegraph and telephone poles, the dog tax, the merchants' ad valorem tax, the vehicle license tax and the special tax on foreign insurance companies, and excepting always dramshop, water and boat or wharfage licenses." (Now Sec. 82.320.) The authority concerning merchants' ad valorem tax was amplified by the Act of 1911 (Laws 1911, p. 420, now Sec. 150.090) which provided: "In the city of St. Louis the duties in this section (relating to assessment of merchants) required to be per-

formed by the county assessor, county clerk and collector, shall be performed by the license collector, of said city of St. Louis, but said license collector shall not receive any fees or other compensation for such services than his salary as license collector.' In regard to the merchants' tax, defendant Hayden testified that about half of his staff of 75 employees was working on or collecting it for about ten months of the year. He also said some licenses are sold for the state; and he remits tax collections to the State Collector of Revenue every Monday morning, also to the School Board of St. Louis, the Art Museum, the Zoo, the Library, and the City, a considerable part of which is for the city sinking fund. Of course, some of the city's tax receipts are used to finance its county functions.

■ It is true that the 1875 Constitution (Sec. 14, Art. IX) provided: "Except as otherwise directed by this Constitution, the General Assembly shall provide for the election or appointment of such other county, township and municipal officers as public convenience may require; and their terms of office and duties shall be prescribed by law." Thus the Act of 1901 would have been constitutional whether the office it created was a county or municipal office. However, our conclusion is that the office of License Collector in St. Louis must be classed as a county office. We base this among other considerations, on the many duties of the office which are county functions in the other counties of this state (as recognized by the 1911 Act) and also because, in creating this office, the Legislature provided for it to be filled by election at the State November election and for vacancies to be filled by appointment by the Governor, as usually provided for other county offices. Even the collection of licenses is not an exclusive municipal function as there are provisions for other counties to collect licenses of various kinds. (See Sec. 316.040, Sec. 318.010, Secs. 423.010–423.080, Sec. 55.140, Secs. 64.170–64.190, Sec. 137.050, Sec. 139.270.) Then,

too, when this office was created, as we' have noted, many duties of the City Collector (which as hereinabove stated, we have held to be a county office) were transferred to this office. It is also significant that the present charter of St. Louis (adopted in 1914) does not designate the License Collector as a City officer. (See Article II on officers to be elected and Article VIII on officers to be appointed.) We, therefore, hold that Sec. 22, Art. VI, 1945 Constitution does not apply to the office of License Collector of St. Louis and that such office has not been affected thereby.

The judgment is affirmed.

All concur.