STATE ex rel. Dale SPRAGUE,
Relator-Respondent,

v.

The CITY OF ST. JOSEPH, Missouri, and F. L. Endebrock, in his capacity as Supervisor of the Department of Public Works of the City of St. Joseph, Missouri, Respondents-Appellants.

STATE ex rel. CITY OF ST. JOSEPH, Missouri, and F. L. Endebrock, in his capacity as Supervisor of the Department of Public Works of the City of St. Joseph, Missouri, Relators,

v.

The Honorable Fred E. SCHOENLAUB, Judge of the Circuit Court of Buchanan County, Missouri, Second Division, Respondent.

Nos. 59460, 59517.

Supreme Court of Missouri,
en banc.

May 10, 1977.

Ronald E. Taylor, St. Joseph, for appellants.

James H. Counts, St. Joseph, for respondent.

SEILER, Chief Justice.

These cases come to the writer on reassignment. They involve the question of whether sections 341.010 through 341.080,[1] inclusive, pertaining to plumbers and plumbing, apply to the city of St. Joseph, a

---

1. All statutory references unless otherwise indicated are to Revised Statutes of Missouri, 1969.

constitutional home rule charter city.[2] We hold that they do not by virtue of Art. VI, Sec. 22, which prohibits the general assembly from creating any municipal office or employment or fixing the powers, duties or compensation thereof, for any city framing its own charter under the home rule charter provisions of the constitution.

Sections 341.010 through 341.080, inclusive, provide a scheme of licensing and regulating persons engaged in the business of plumbing in cities with 15,000 or more inhabitants. The statute requires that every person so engaged in cities of the requisite size must possess a certificate from the Board of Plumbing Examiners of the city in which he resides or from the board nearest his place of residence. To this end, the statute establishes three member Boards of Plumbing Examiners in every city with 15,000 or more inhabitants. It further provides that the board members are to be the chairmen of the city's board of Health and two plumbers—the plumbers to be appointed by the mayor.

The statute prescribes the terms of the board members and the cost of a certificate, provides for their compensation from the city's treasury, that certificates shall be valid throughout the state, that no plumbing work shall be done without a permit from the Board of Health, and that cities shall establish rules and regulations for material, construction, and inspection of plumbing work. The statute creates the office of city plumbing inspector, prescribes his qualifications, and provides that he is to be paid by the city. The statute also requires that the board convene and administer an examination over generally specified subject matter. This description is not exhaustive, but only attempts to cover the major provisions of the statute.

Relator Sprague holds a master plumbers license from the Board of Plumbing Examiners of the city of Gladstone, a statutory class type city. Sprague has attempted to acquire plumbing permits from the city of St. Joseph by invoking sections 341.010 through 341.080 but the city has refused to issue him these permits. Sprague claims that although his residence is nearest St. Joseph, Gladstone is the city nearest his residence with a validly constituted plumbing board because a vacancy exists on the St. Joseph board; that therefore his license issued by Gladstone should be recognized by St. Joseph under section 341.050. Sprague filed his petition for a writ of mandamus in the circuit court to compel the proper St. Joseph authorities to honor his Gladstone license, to issue plumbing permits, and to inspect work done pursuant to those permits. The circuit court of Buchanan County issued its alternative writ January 1, 1976, and its peremptory writ on February 25, 1976. The city of St. Joseph appealed the issuance of the writ of mandamus to this court on the basis that jurisdiction lies here under Art. V, Sec. 3 because construction of the state constitution is involved. This is case No. 59460. The city of St. Joseph also filed a petition for a writ of prohibition in this court to prevent the circuit court from enforcing the writ of mandamus. We issued a stop order, followed by our preliminary rule in prohibition. This is case No. 59517. The cases were ordered consolidated in this court.

As will be seen from the following discussion, Sprague's contentions concerning the alleged vacancy on the St. Joseph board and his justification for his being examined in Gladstone are irrelevant to the material issues of the cases because sections 341.010 through 341.080, inclusive, do not apply to constitutional home rule charter cities.

Art. VI, Sec. 22, provides as follows: "No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents."

■ This section was enacted as part of the 1945 constitution and has remained un-

---

2. The constitutional charter for St. Joseph was adopted by its voters on October 31, 1961.

changed. The Missouri courts have held in a number of cases either directly or indirectly that Sec. 22 is a limitation on the power of the legislature with respect to constitutional charter cities.[3]

In *State ex rel. Burke v. Cervantes*, 423 S.W.2d 791 (Mo.1968), a dispute arose concerning wages and conditions of employment between the St. Louis firemen and the mayor. The firemen called on the mayor to appoint an arbitration board pursuant to the Firemen's Arbitration Board Act. This act provides that the firemen may request the chief executive of any city, town, or other governmental unit to appoint an arbitration board to hear their disputes and make recommendations. The mayor refused to act and the fireman sought mandamus to compel him to do so. The trial court granted mandamus and the mayor appealed. This court reversed, holding the statute unconstitutional as applied to constitutional charter cities under Art. VI, Sec. 22, supra.

The court said that undoubtedly it was true that by Art. VI, Sec. 22, the city of St. Louis (being a constitutional charter city) was given a broad measure of complete freedom from state legislative control. 423 S.W.2d at 793. The firemen argued that the purpose of the statute was to create statewide uniform labor practices and therefore it was outside the scope of Art. VI, Sec. 22. This is precisely the argument that is being advanced by relator Sprague with respect to plumbing as covered by the sections in question in chapter 341. The court recognized that the majority of cases hold that legislation concerning municipal fire departments is a matter of statewide concern and that a general statute on the subject applies to home-rule municipalities. But the court went on to point out that this was not true where "there is a constitutional limitation upon the legislature concerning interference with the powers and duties of municipal officers such as is contained in

Art. VI, Sec. 22 of the Constitution of this state." 423 S.W.2d at 793. The court held that therefore the mayor could not be required to assume the additional duty of appointing a Firemen's Arbitration Board; that in working out the grievances of city employees, the mayor was not required to go beyond the comprehensive provisions of the city's charter on the subject; and that Secs. 290.350 and 290.360, RSMo 1959 (L.1963, p. 415) were unconstitutional and void as applied to constitutional charter cities because they imposed duties upon a municipal officer and created a municipal office.

The *Cervantes* opinion is based squarely on the prohibition found in Art. VI, Sec. 22, against the legislature creating or fixing powers, duties, or compensation of any municipal office or employment for a constitutional charter city.

In *City of Joplin v. Industrial Commission of Missouri*, 329 S.W.2d 687 (Mo.banc 1959), there was a proceeding under the Prevailing Wage Act to have the Industrial Commission ascertain the prevailing hourly rate of wages in Jasper county for workmen needed to execute contracts for construction of sewers in Joplin, a constitutional charter city. The commission made its determination over the objections, among others, of the city that the statute was unconstitutional on several grounds, one being that to require the city to stipulate in its contracts the crafts or types of workmen and rates of pay constituted fixing of duties and compensation of municipal employment in violation of Art. VI, Sec. 22. The court held that to construe the statute as applicable to direct employees of public bodies would make it unconstitutional as to all constitutional charter cities by virtue of Art. VI, Sec. 22. The court held further that the act by its terms did not apply to city employees but only to the employees of private contractors doing public works. It is clear that had the act attempted to apply

---

**3.** According to information contained in the 1975–76 Official Manual there are fifteen constitutional charter cities in the state. Their combined population of 1,770,456, based on 1970 census figures, constitutes 54% of the urban population of the state.

to public employment on public works by a constitutional charter city, the ruling would have been otherwise. In the *Cervantes* case, supra, the court cited the City of Joplin case as one "where it was said that to construe the Prevailing Wage Act as applicable to direct employees of public bodies would make it unconstitutional as to all constitutional charter cities because of said § 22." 423 S.W.2d at 793.

In *Stine v. Kansas City*, 458 S.W.2d 601 (Mo.App.1970), a case cited by relator Sprague, the facts were that Kansas City, a constitutional charter city, had adopted an ordinance that repealed certain articles of its building code and enacted a new uniform plumbing code. The new code was silent as to the licensing of journeymen plumbers. Among other complaints, the plaintiffs objected that the new code made no provisions for examining and licensing journeymen plumbers as required by chapter 341. The parties, however, had stipulated that the only issues in the case were two: a declaration of the rights and duties of the parties under the new code and chapter 341, and whether the new code was in violation of chapter 341 for failure to provide for the examination of journeymen plumbers. The city lost in the trial court and on appeal sought to invoke the jurisdiction of the supreme court on the ground that construction of Art. VI, Sec. 22, was involved. The city argued that the application of chapter 341 to a constitutional charter city would be unconstitutional because it undertakes to create and fix the power, duties, and compensation of municipal offices, namely, the board of examiners and plumbing inspector. The supreme court transferred the appeal to what was then the Kansas City Court of Appeals to determine the question of appellate jurisdiction. At 458 S.W.2d 605, that court cites the *City of Joplin* and *Cervantes* cases, and declares that those precedents "suggest that a substantively arguable constitutional issue subsists", but that the city failed to raise the constitutional question at the first available opportunity and the issue was therefore not preserved for review. The court then goes on to decide the case

without consideration of the effect of Art. VI, Sec. 22, and relies on the "familiar rule" under the earlier cases that when there is a general law on the subject, the charter of a constitutional charter city or its ordinances must be in conformity with the state law on the same subject. But the court expressly notes, 458 S.W.2d at 606, that it does not consider the effect of this "familiar rule" when the inconsistency is not between a statute of general concern and a charter or ordinance, but between such a statute and a constitutional provision such as Section 22. The court then again pointed out that this question was not properly raised for appellate review.

In the case before us the question is properly raised, and it is apparent that while the *Stine* case upholds the provisions of chapter 341 under the restricted appellate review imposed in that case, *Stine* does not in any way pass on the constitutional question now before us regarding the validity of chapter 341 as applied to a constitutional charter city in light of Art. VI, Sec. 22.

In *Preisler v. Hayden*, 309 S.W.2d 645 (Mo.1958), the question was whether the office of License Collector of the City of St. Louis (an office created by statute in 1901) had ceased to exist because of the provisions of Art. VI, Sec. 22, of the 1945 constitution. The court said: "There can be no doubt that Sec. 22 of Art. VI, 1945 Constitution, applied to all offices in cities of the constitutional class created under Sec. 19, Art. VI, 1945 Constitution, because the only offices they can have are municipal offices." 309 S.W.2d at 647. However, St. Louis is both a city and a county and the court concluded that the office of License Collector must be classed as a county office and therefore, Art. VI, Sec. 22 did not apply. Under the *Preisler* decision the only offices St. Joseph can have are municipal offices, it being a constitutional charter city. That being the case, the legislature cannot create or establish for St. Joseph a board of examiners of plumbers or say who its members shall be or their duties or compensation or who shall appoint them.

In *State ex rel. Lipps v. City of Cape Girardeau,* 507 S.W.2d 376 (Mo.1974), cited by relator Sprague, while this court therein stated that the constitutionality of chapter 341 has been established on previous occasions and that it represented a delegation to cities of the state's police power with respect to plumbing, the court was not dealing with a constitutional charter city (Cape Girardeau is a city of the third class) and the question of whether chapter 341 could validly apply to a constitutional charter city in view of the provisions of Art. VI, Sec. 22 was not before the court, was not discussed, and none of the cases cited in the *Lipps* case bear on the question. The *Lipps* case is sound as applied to one of the legislatively created classes of cities, towns, and villages, but it has no bearing on the application of chapter 341 to a constitutional charter city in light of Art. VI, Sec. 22, supra.[4]

We do not mean to say or infer that a constitutional charter city is immune from all legislative action. The contrary is well illustrated by the recent decision of *Cohen v. Poelker,* 520 S.W.2d 50 (Mo. banc 1975). This case dealt with whether the members of the Board of Estimate and Apportionment of the city of St. Louis could keep members of the public from attending meetings of the board in alleged violation of chapter 610, RSMo Supp.1973, known generally as the "Sunshine Law". This court affirmed a decree enjoining the members of the board from doing so.

One of the contentions of the board was that the law was unconstitutional as applied to St. Louis because of Art. VI, Sec. 22, supra. The court held that the law represented a legislative determination and declaration of the public policy of the state relating to meetings, records, and votes of all public governmental bodies, a policy of general interest and import, and applicable statewide at all levels of government, including constitutional charter cities. But

also it should be noted that the Sunshine Law does not in any way create or fix the powers, duties, or compensation of any municipal office or employment for any constitutional charter city, which is not true of chapter 341. Chapter 341, as applied to a constitutional charter city, would establish a board of examiners of plumbers, determine the manner of selection of the members, impose duties on the mayor, council, and chairman of the board of health, and provide for compensation and prescribe the duties of the members of the board thus created. This would be in violation of the prohibitions of Art. VI, Sec. 22.

Whether a statute does or does not specify the powers and duties of city officials of a constitutional charter city was of central concern in *City of St. Louis v. Missouri Commission on Human Rights,* 517 S.W.2d 65 (Mo.1974) in determining whether the statute violated Art. VI, Sec. 22. In that case the commission ordered a public hearing on a charge that there was discriminatory treatment by reason of race in the St. Louis fire department. The city then filed a petition for declaratory judgment, contending that the application of chapter 296, RSMo 1969, was unconstitutional as to it by reason of Sec. 22. This court upheld the application of chapter 296 to St. Louis, but in doing so pointed out that no provisions of chapter 296 directly specifies any powers or duty of city officials. Rather, chapter 296 simply requires as a matter of statewide policy that the powers and duties of city officials be exercised in a nondiscriminatory manner and that a decision by the human rights commission on whether the city authorities were correctly applying the general state policy was not " 'fixing the powers [or] duties' of a municipal office, which is what the constitution prohibits." 517 S.W.2d at 70.

■ The foregoing cases—*Cervantes, City of Joplin, Stine, Preisler, Cohen,* and

---

4. The fact that chapter 341 predated the 1945 constitution by many years and that St. Joseph did not adopt its charter until 1961, of course, would not mean that offices or boards created under chapter 341 would nevertheless continue in existence, because Sec. 22 specifically provided that all such offices "heretofore created" shall cease at the end of the terms of any present incumbents.

*Missouri Commission on Human Rights*—all make it quite plain that Art. VI, Sec. 22 is meant to and does prohibit the legislature from creating any municipal office or board or fixing the power, duties, or compensation thereof for a constitutional charter city. It follows that the provisions of chapter 341 purporting to establish in St. Joseph a board of examiners of plumbers, fixing its size, imposing the duty of chairman upon the chairman of the board of health of the city, requiring the mayor to name and the council to approve the other two members of the board, setting their terms and compensation, and prescribing their duties, and further creating the office of plumbing inspector, and prescribing his duties are all unconstitutional and void as applied to constitutional charter cities, including St. Joseph.

The present litigation is before us because the trial court issued its peremptory writ of mandamus ordering the city and its supervisor of the department of public works to honor relator's master plumber's license issued by the city of Gladstone and to permit relator to act as though he had such a license from the city of St. Joseph.

■ Relator has failed to make the showing required for a writ of mandamus for the reason, as set forth above, that the particular statutes, on whose applicability to St. Joseph relator's claim rests (as otherwise he offers no justification for admittedly not taking the examination at the city nearest his place of residence),[5] do not apply to St. Joseph under Art. VI, Sec. 22, and for the further reason that relator has not in any event satisfied the established requirements for mandamus.

■ A court will issue a writ of mandamus only when it is shown that the person requesting the writ has a clear and unequivocal right to the relief requested. *State ex rel. Breshears v. Missouri State Employees' Retirement System,* 362 S.W.2d 571, 573 (Mo. banc 1962). "It is elementary, of course, that mandamus does not issue where the right sought to be enforced is doubtful. . . . [T]he burden is on the relator to show his right to the remedy." *State ex rel. Purdy Reorg. School Dist. No. 11 v. Snider,* 470 S.W.2d 805, 809 (Mo.App. 1971). "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." *State ex rel. Porter v. Hudson,* 226 Mo. 239, 265, 126 S.W. 733, 740 (banc 1910). " 'The office of mandamus is to execute not adjudicate.' " *State ex rel. School Dist. No. 24 of St. Louis County v. Neaf,* 344 Mo. 905, 911, 130 S.W.2d 509, 511 (Mo. banc 1939).

■ Relator Sprague's petition is based on the allegation that he received a master

5. Relator Sprague also makes the contention that "the statutory scheme gives statewide acceptance to a certificate or license regardless of which city issues the same", but we do not believe the legislature had any such intention. If what relator contends were the case, this would encourage "shopping around" by applicants to find the board with the easiest examination or examiners and to use that method to obtain a certificate. This would not provide much protection to the public. Furthermore, the statutory provisions are plainly the other way. Section 341.050 in speaking of the certificate for the master plumber or the journeyman plumber states that "*[s]aid certificate* shall be valid and have force throughout the state . . . ." (emphasis supplied). There are only two places where "said certificate" can be obtained and that is by application either to the board of the city where the applicant resides or to the board nearest his place of residence. Section 341.030. There is nothing in the chapter to support the proposition that "said certificate" means one from any city which issues the same.

It is appropriate to remark, also, that the reciprocity called for by section 341.050 is limited by section 341.020 to plumbing to be performed in cities of 15,000 or more population and by implication is likewise limited to cities where section 341.040 boards of examiners exist. Otherwise, plumbers licensed by such boards could demand reciprocity in a constitutional charter city, while plumbers licensed by a constitutional charter city would have no such right with respect to a statutory type city, a result which would not make for orderliness or rationality in regulation and one which we do not believe the legislature intended.

plumber's license from Gladstone on November 19, 1975; that since Sec. 341.050 provides that a license is to have force and effect throughout the state, St. Joseph is bound to honor it; that this is a purely ministerial duty. The petition makes no mention of Sec. 341.030 which requires persons to obtain a certificate from the board of the city where they reside or from the board nearest their place of residence. There is no allegation in the petition that Gladstone is the city nearest his place of residence. The petition falls far short of showing a clear right in relator to use his Gladstone license in St. Joseph.

The return of respondents alleges relator failed to obtain a certificate from the board nearest his place of residence as required by Sec. 341.030; that to issue the writ would require respondents to circumvent the statute; also that relator has twice failed the St. Joseph examination; that the St. Joseph board is the one nearest his residence; that chapter 341 does not apply to a constitutional charter city under Art. VI, Sec. 22.

The reply of relator Sprague to the return alleges that when he obtained his license from Gladstone, St. Joseph did not have a valid board because the term of the board's journeyman plumber, Milton Jones, had expired, and hence, Gladstone was the city nearest his residence which regulated plumbing at the time. The reply denied that relator had twice failed the St. Joseph examination, but did allege he had taken it three times and had never obtained a license.

There is no showing on these pleadings that relator has an unequivocal right to the remedy sought. He is trying to adjudicate, not execute.

Nor is relator Sprague's position as to mandamus improved by the record at the trial (although the facts and conclusions related below are somewhat in the nature of false issues, inasmuch as we have held that sections 341.010 through 341.080 do not apply to St. Joseph). The parties stipulated that relator Sprague's place of residence is closer to St. Joseph than it is to Gladstone; that the St. Joseph board consisted of three members and the term of Jones, as journeyman plumber, expired August 29, 1975, and his successor was not confirmed by the city council until December 1, 1975.

At the trial relator Sprague testified he made application to the building commissioner for plumbing permits, tendering his Gladstone license; that the building commissioner told him the next day that nothing could be done until a board was appointed and also said there was a vacancy on the board and that they did not have an acting board. The city offered to establish there was no actual vacancy on the board during the period August 30, 1975, to December 1, 1975, and that Jones, the journeyman plumber, continued to hold office after August 30, 1975, but the court sustained relator's objections.

▆ There still is no clear showing on the record before us that relator Sprague is entitled to mandamus to permit him to use his Gladstone license in St. Joseph. Again he is trying to adjudicate, not execute. The fact is that relator has taken the St. Joseph examination three times without obtaining a license. His claim rests on the technical point that he took a plumber's examination in a town not nearest his residence at a time when supposedly the town nearest his residence did not have an operative board. He does not say that he offered to take the examination in St. Joseph between August 30 and December 1, 1975, and was refused. Relator makes no claim that St. Joseph purposefully or with intent to injure or harass him failed to fill the alleged vacancy sooner. He testified that the building commissioner told him there was "a vacancy in the board and they did not have an acting board". This testimony is merely a conclusion by a layman. The stipulation of the parties does not state there was a "vacancy" or that there was not an acting or operative board. It states only that the term of Milton Jones expired August 29, 1975, and that his successor was not confirmed by the city council until December 1, 1975. In actuality, relator Sprague is mak-

ing a collateral attack on the validity and existence of a board in St. Joseph with no showing whatever that he is in a position to make such an attack or that the St Joseph board would have refused to act had he made application during the August 30—December 1, 1975, period or that it could not legally have acted on his application had he made one.

We can take judicial notice of the city charter of St. Joseph, see Art. VI, Sec. 19, 1945 Constitution. Article XVI of the St. Joseph charter deals with boards and commissions. Section 16.1 provides all boards and commissioners shall consist of five members appointed for terms of five years and until their successors are appointed and qualified. Under these provisions the expiration of the term of Milton Jones would not make the board inoperative. He would continue to be a legal member of the board until his successor was appointed and qualified.

For all the foregoing reasons relator does not meet the requirements for mandamus. Therefore, in case No. 59460 the judgment of the circuit court granting a peremptory writ of mandamus is reversed and the writ is quashed. The writ of mandamus having been quashed, the petition for a writ of prohibition in case No. 59517 is dismissed as moot.

MORGAN, BARDGETT and FINCH, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

RENDLEN, J., not participating because not a member of the court when cause submitted.

DONNELLY, Judge, dissenting.

The principal opinion's analysis of Mo. Const. Art. VI, § 22, and its effect on home rule charter cities, is scholarly and interesting, but it is irrelevant in this case. The essential and determinative question here is whether the city of St. Joseph should be compelled "to honor relator's master plumber's license issued by the city of Gladstone * * *."

If I understand the facts: (1) there is no Chapter 341 board of plumbing examiners in St. Joseph; (2) the nearest such board of plumbing examiners to relator's place of residence is in Gladstone; (3) relator procured a certificate from the Gladstone board; and (4) the city of St. Joseph refuses to honor it.

Section 341.030, RSMo 1969 provides that persons desiring a certificate to work as a plumber may apply "to the board nearest their place of residence."

Section 341.050, RSMo 1969 provides that a certificate, when issued, "shall be valid and have force throughout the state * *."

I find no ambiguity in the statutes. Relator went to the board nearest his place of residence, procured a certificate, and now asks that it be considered valid in St. Joseph, as the statutes mandate.

I would affirm the action of the trial court and, therefore, respectfully dissent.